**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| SARAH FELTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-821 |
| ) | |
| LEWIS E. REED, etc. ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**Introduction**

Would William McKinley's front porch have been a public forum, from which he could exclude no one, if he had been President while giving speeches to invited groups?  See K. Rove, *The Triumph of William McKinley* 310ff. (2015).  Does an elected official's use of his personal cell phone to discuss public business with a constituent transform his phone into a public forum, requiring him to take calls from anyone at any time?  Plaintiff's novel theory of using the First Amendment as an offensive weapon to commandeer a public officer's private medium of communication, a medium withal that is not under his or any governmental agency's control, would answer these questions in the affirmative.  The law, however, requires that they be answered in the negative, and that plaintiff's complaint be dismissed.

Facts

Defendant Lewis Reed is President of the Board of Aldermen of the City of St. Louis. Complaint [ECF 1], ¶10.  He has established a Twitter account, using as the account address or

1

"handle," @PresReed.  *Id.*, also ¶16.  Neither he nor the City of St. Louis owns or controls Twitter.  The terms of use of Twitter accounts are controlled by Twitter.  *Id.,* ¶¶11.  There is no allegations that any ordinance or other official act of the City or its Board of Aldermen authorized or required President Reed to establish his Twitter account.  See *Id.,* ¶¶17-18.  President Reed has chosen to designate his Twitter account or profile as "public," meaning that any other Twitter user can access the account to view his statements or "tweets."  *Id.,* ¶¶11-12, 21-22.  He uses the account at least in part to communicate information and opinions about public affairs, including City government affairs.  *Id.*, ¶19.

Plaintiff is a political activist who is hostile to President Reed. Complaint [ECF 1] ¶¶9, 24-26.  She has used her own Twitter account to communicate with President Reed's account, as she could do under Twitter's account protocols, sending messages critical of President Reed or his views.  *Id.*   President Reed utilized a standard tool of Twitter to block plaintiff's access to his account in January of this year.  *Id.,* ¶¶14-15, 26.  As a result, plaintiff was unable to communicate her criticism of President Reed directly to him through his Twitter account.  *Id.*, also ¶25.  Although the complaint appears to allege that plaintiff's access was still blocked at the time suit was filed, there is no allegation that she ever made any inquiry to ascertain if the block was in fact intentional, nor is there any allegation that she requested defendant to unblock her and was refused.  See *Id.,* ¶26.  She remains free to access his Twitter communications or tweets on line and to publish her criticisms of him in any way that she chooses, except by means of President Reed's own account.  See, e.g., *https://twitter.com/presreed?lang=en*.  Whether plaintiff remains blocked at this time is unclear from the complaint.

Twitter is a "social media platform," i.e., an electronic medium of communication that is operated by a private entity and which affords access to the medium to users or subscribers on

Twitter's terms and conditions. Complaint [ECF 1] ¶11. The basic structure of Twitter is that a public profile account can be viewed by any other user, and other users can "follow" such an account and make comments on the tweets of the public account holder. Such comments can generate further comments between or among the Twitter users who access the public profile account. Comments are also made directly to the public profile account holder. *Id.*, ¶¶11-13, 21-22.

Twitter itself can block tweets if it chooses to do so. All Twitter users have the ability at will to block others from accessing a user's public account. Complaint [ECF 1] ¶14. Although plaintiff alleges that President Reed's Twitter account is controlled by the government, *id.* at ¶¶17, 30, that is a conclusion belied by the other facts alleged.

Argument

Defendant has moved to dismiss the complaint herein for failure to state a claim. As the Court well knows, see, e.g., *Rodgers v. Univ. of Mo. Bd. of Curators*, 56 F.Supp.3d 1037 (E.D. Mo. 2014), the standard governing such a motion is adumbrated in *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth, namely legal conclusions and threadbare recitals of the elements of a cause of action. Second, the Court must determine whether the complaint states a plausible claim for relief. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft,* 556 U.S. at 679. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* When faced with alternative

explanations for the alleged misconduct, the Court may exercise its judgment in determining whether the plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Rodgers,* 54 F.Supp.3d. at 1043.

When a complaint seeks declaratory or injunctive relief, it is also incumbent on the plaintiff to plead facts showing the existence of a justiciable controversy. The Court does not sit to render advisory opinions or to decide hypothetical or moot controversies. E.g., *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998).

Finally, in considering a motion to dismiss, some matters outside the pleadings can be considered, such as matters subject to judicial notice (e.g., public records) or documents necessarily embraced by the complaint. E.g., *Ryan v. Ryan,* 889 F.3d 499, 505 (8th Cir. 2018); *Greenman v. Jessen,* 787 F.3d 882 (8th Cir. 2015).

**1.     President Reed's Twitter account is not a public forum, designated or otherwise, and President Reed's blocking of plaintiff's access to his account does not implicate the First Amendment.**

It would be idle to deny that plaintiff's claim parallels that asserted against President Trump in *Knight First Amendment Inst. v. Trump,* 928 F.3d 226 (2nd Cir. 2019), on denial of rehearing, 953 F.3d 216 (2nd Cir. 2020), pet. cert. pending; see also *Campbell v. Reisch,* 2019 U.S.Dist.LEXIS 138881 (W.D.Mo. 2019), appeal pending. Defendant Reed submits, however, that the cases holding that the "interactive spaces" of the Twitter platform are a designated public forum are in error.[1]

---

[1] Defendant does not understand plaintiff to contend that a Twitter account is a "traditional" public forum. See Complaint [ECF 1] ¶20.

4

The common thread in the Supreme Court's public forum jurisprudence is governmental control of the forum, whether it be physical or "metaphysical."  See *Manhattan Community Access Corp. v. Halleck,* 139 S.Ct. 1921 (2019).  In the case at bar, President Reed's Twitter account simply is not a public forum.  Defendant submits that the correct analysis of this issue is set forth in Judge Park's opinion on denial of rehearing in *Knight/Trump.*  As Judge Park ably explained in his dissent, 953 F.3d at 228-29 [citations and footnote omitted]:

> The Supreme Court has warned that we should be "wary of the notion that a partial analogy in one context," i.e. public-forum doctrine, "can compel a full range of decisions in such a new and changing area." . . . "Having first arisen in the context of streets and parks, the public forum doctrine should not be extended in a mechanical way" to new areas if it is not "compatible with [their] intended purpose." . . .. For example, the Supreme Court has noted the limited applicability of the public-forum framework to public television because "public broadcasting as a general matter does not lend itself to scrutiny under the forum doctrine." . . .
>
> The panel here engaged in just the sort of mechanical extension of the public-forum framework that the Supreme Court has warned against. To shoehorn Twitter into public-forum doctrine, the panel carved out "interactive spaces" from the tweets to which they are connected. It acknowledged that the tweets are government speech, but then applied public-forum doctrine to the "interactive spaces." This disaggregation of Twitter's features was wholly artificial—Twitter's own rules make no such distinction between "initial tweets" and "interactive spaces.". . . The panel then stretched the concept of a public forum, which was originally meant to ensure that "members of the public retain strong free speech rights when they venture into public streets and parks," to hold that the President may not use his personal account on a private company's website in a certain way. . . . The panel engaged in this forced analysis because the personal social-media pages of government officials do "not lend [themselves] to scrutiny under the forum doctrine" the way a sidewalk or park might. . . .

In the case at bar, it is true that President Reed established his Twitter account after he took office, but plaintiff's view that he did so with the intention of creating a public forum is a conclusion.  As noted above, there is nothing alleged about the creation of the Twitter account that would link its creation to the carrying on of the official business of the office of President.

5

The account simply is not a designated public forum.  See also *Hargis v. Bevin,* 298 F.Supp.3d 1003 (E.D.Ky. 2018).

Apart from the fact that forum analysis cannot be applied to subdivisions of the Twitter account operation, it is equally apparent from the face of the complaint that President Reed's use of his Twitter account to describe his activities, or the activities of City government, and to express his views, is at most engaging in "government speech,"  As in the case of the Kentucky governor, ". . . Governor Bevin's use of privately owned Facebook Page and Twitter pages is personal speech, and, because he is speaking on his own behalf, even on his own behalf as a public official, 'the First Amendment strictures that attend the various types of government-established forums do not apply.'"  *Hargis v. Bevin,* 298 F.Supp.3d 1010-11.

It is well established that the Supreme Court's forum analysis principles do not apply to government speech.  Again, as Judge Park put it concisely, 953 F.3d 228 (citations in original):

> Even assuming state action, the panel's application of First Amendment public-forum doctrine to @realDonaldTrump is a poor fit, as is the characterization of the account's "interactive spaces" as a public forum. The panel opinion's public-forum analysis strayed from precedent in two ways. First, it is well established that when the government engages in its own speech, it is permitted to "speak for itself" and to "select the views that it wants to express." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467-68, 129 S. Ct. 1125, 172 L. Ed. 2d 853 (2009) (citations omitted). Thus, where government speech is at issue, forum analysis does not apply. *Id.* To avoid this result, the panel disaggregated the President's Twitter feed into his initial tweets, which it recognized as government speech, and "his supervision of the interactive features of the Account," which it excluded from that speech. *Knight*, 928 F.3d at 239. With this move, the panel concluded that the "interactive spaces" are a public forum. *Id.* at 234. But the panel cannot have it both ways, and the Supreme Court has warned against extending the public-forum framework in just this sort of "mechanical way." *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 672-73, 118 S. Ct. 1633, 140 L. Ed. 2d 875 (1998).

Nothing in the Supreme Court's First Amendment jurisprudence imposes on public officials a constitutional duty to propagate the views of any member of the community.  Cf. *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 135 S. Ct. 2239 (2015).

6

The fact that President Reed chooses to maintain control over the messages he wishes to convey does no violence to the precepts of the First Amendment.  The fact that other members of the public may be involved in the expression of those views, by means of "likes" or "re-tweets," makes no difference.  The message is that of President Reed, and plaintiff is not entitled to conscript him or his personal Twitter account into her efforts to promote contrary views.  Plaintiff's First Amendment claim must fail.

    **2.**	**This Court lacks equitable jurisdiction to mandate plaintiff's access to President Reed's personal Twitter account, as such judicial intrusion to control a personal Twitter account would itself contravene the First Amendment.**

The creation and operation of a personal Twitter account by a public official is at the confluence of two recognized constitutional principles.  First, as explicated in *Minnesota State Bd. for Comm'y Colleges v. Knight,* 465 U.S. 271, 285 (1984):  "Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues."  See also *Smith v. Arkansas State Highway Employees,* 441 U.S. 463 (1979).  Second, the First Amendment prohibits government mandates of rights of access to private mediums of communication.  In *Miami Herald Co. v. Tornillo,* 418 U.S. 241 (1974), the Supreme Court struck down a Florida statute mandating that newspapers provide access to political candidates to respond to the newspapers' published criticism of the candidates.  The Court held that government-enforced rights of access to newspapers would contravene the First Amendment by stripping newspapers of editorial control over the content of their own publication, and would inhibit, rather than advance, free and open discussion of matters of public importance.

Plaintiff's complaint would accomplish goals that are fundamentally inconsistent with the First Amendment and this Court's equitable authority. It would reduce President Reed to the status of a "captive audience" and would place this Court in the untenable position of superintending President Reed's management of his own means of communication. If President Reed has no choice but to endure whatever attacks on him that come from other Twitter users, it will have the inevitable effect of requiring him to surrender his public account, thereby causing a net reduction in speech on public issues, not more.

Furthermore, assuming President Reed elected to retain his public Twitter profile, plaintiff's insistence on declaratory and injunctive relief to preclude him from blocking users "on the basis of viewpoint" would place both President Reed and this Court in the position of having to assess whether communications directed at President Reed are merely expressions of "viewpoint," or are obscene, threatening or libelous, so as to justify blocking individual users. What plaintiff desires in this case is exactly what the Florida law mandated in *Miami Herald*: surrender of control of defendant's personal medium of communication, albeit surrender of control to the Court.

In this regard, defendant Reed notes that plaintiff's invocation of federal equitable jurisdiction is dubious due to the obvious lack of irreparable harm. Although defendant has chosen not to entertain plaintiff's criticisms through receipt of her comments on his "tweets," plaintiff's complaint fails to describe any injury in fact fairly attributable to defendant Reed's conduct and redressable by an injunction. Plaintiff's speech has not in fact been burdened or restrained in any way. She apparently can access President Reed's Twitter account through a link at the City's Board of Aldermen web site, Complaint [ECF 1] ¶18, and she can of course evade the block at will by creating a different Twitter account for herself. Cf. *Am. Atheists v. Rapert,*

8

2019 U.S. Dist. LEXIS 230493 (E.D.Ark. 2019)   Further, she is free to access any and all public tweets on line and to publish criticism of President Reed through her own Twitter account and any other medium otherwise available to her.  Certainly there would be a burden on plaintiff if she had a right to be heard by President Reed, but she has no such right to compel him to be her audience or to provide a medium for her to express her views through his personal account.  The complaint reveals no practical way in which President Reed can block plaintiff's criticism from his own view only, without also blocking other followers or participants in the tweeting process from seeing plaintiff's comments--that is the way Twitter works.  Thus, plaintiff's claimed harm is merely incidental to President Reed's use of one of several tools available to him to manage his account--tools that are made available by Twitter and not by the government.  An injunction will not redress plaintiff's supposed injury but will instead injure the defendant.

**3.     President Reed's management of his personal Twitter account is not action "under color of law" for purposes of jurisdiction under 42 U.S.C. §1983.**

It is elementary that an action under 42 U.S.C. §1983--which is the statute relied on by plaintiff, Complaint, ECF 1, ¶ --requires a plaintiff to allege that the defendant is acting under "color of law," i.e., state action.  State action requires *both* an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," *and* that "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  See *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).  Consequently, federal jurisdiction under §1983 does not reach purely private conduct of officers of state or local government.  E.g., *Polk County v. Dodson,* 454 U.S. 312 (1981); *Magee v. Trs. of the Hamline Univ*., 957 F. Supp. 2d 1047 (D. Minn. 2012).

9

Although plaintiff attempts by adroit pleading about "policies" to circumvent the problem, it is apparent from the complaint as a whole that President Reed's Twitter account has no connection to the government other than his use of his title to identify himself in the account address, and the subject matter of many (or even most) of his communications.  There is nothing in the St. Louis City Charter (of which this Court can take judicial notice) which authorizes President Reed or any other individual officer to establish or maintain social media accounts. See St.L.Charter, art. IV relating to the Board of Aldermen. The complaint contains no allegation that any City ordinance authorizes or directs the establishment or management of such accounts. Still further attenuated from President Reed's governmental authority is the specific conduct of blocking plaintiff's access to his account.  That conduct is authorized by Twitter, not by the government, and in utilizing that feature of his account, President Reed is acting as just another Twitter account holder.

President Reed's conduct in connection with Twitter is no more attributable to government than is plaintiff's. [2]  Plaintiff's claim fails the most elementary test for an actionable constitutional wrong and must be dismissed.

## Conclusion

Plaintiff has failed to state a cognizable claim for relief in this case.  Her complaint must be dismissed.

>
> Respectfully submitted,
> JULIAN L. BUSH
> CITY COUNSELOR
> /s/Robert H. Dierker 23671(MO)
> Deputy City Counselor

---

[2] Indeed, Twitter itself can block messages from account holders on its platform if it chooses to do so.  See *https://www.bloomberg.com/news/articles/2020-08-06/twitter-blocks-trump-campaign-account-over-covid-misinformation.*

dierkerr@stlouis-mo.gov
Amy Raimondo 71291(MO)
Assistant City Counselor
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956
Attorneys for Defendant