# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SARAH FELTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:20-CV-00821 JAR |
| ) | |
| LEWIS E. REED, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Lewis Reed's Motion to Dismiss. (Doc. No. 11). The motion is fully briefed and ready for disposition. For the following reasons, the motion is denied.

### I.    Background

Plaintiff Sarah Felts brings a 42 U.S.C. § 1983 claim against Defendant Lewis Reed, President of the St. Louis Board of Aldermen, alleging Reed violated her First Amendment rights by blocking her from his Twitter account in an act of viewpoint discrimination in a designated public forum. Felts seeks declaratory and injunctive relief as well as nominal damages.

The Court takes the following factual allegations from Plaintiff's complaint. (Complaint ("Compl."), Doc. No. 1). Reed is the President of the St. Louis Board of Aldermen. Reed runs a Twitter account under the handle "@PresReed." He created the account in March of 2009, two years after he became President of the St. Louis Board of Alderman.

Twitter is a social media platform that allows users to publish short messages called "tweets." Twitter allows users to repost ("retweet") and respond to tweets posted by users with public profiles, including many government officials. Twitter users can also respond to and interact

1

with other users in relation to such public tweets. Twitter users can choose to make their page either public or private. A private profile is one in which a user restricts access to their page to only those other users they specifically approve. A public profile is one that can be accessed by any user who has not been "blocked" by the page's owner. Reed has a public Twitter profile, so anyone, except users he has blocked, may view his tweets, interact with his tweets directly, and interact with tweets by other users made in response to his tweets. If a person is blocked by Reed, they may no longer view or interact with his tweets from their Twitter account, although they may still view his tweets through another account.

The @PresReed page's biography describes Reed as: "Father of 4 great kids, husband, public servant, life long democrat, proud St. Louis City resident, President of the Board of Aldermen." His page links to the official website for the Board of Aldermen's President's Office, which in turn links to his Twitter page and includes a feed of his posts. Reed tweets frequently, sometimes multiple times a day, about legislation, community events held by the Board of Aldermen, his positions on St. Louis political issues, and to inform his followers of public health and safety updates. Examples of Reed's tweets from the complaint include: "Thank you to the members of the HUDZ Committee for their unanimous support of Board Bills 214 % 216 for the @MLS4theLou project! The bills now move to the full Board of Aldermen for two more votes before becoming law #STLBOA @STLCityGov" and "Second North St. Louis #COVID19 Mobile Testing Site Opens TODAY!" followed by the location of the testing site. (Compl. at ¶ 19).

On January 26, 2019 at 4:47 p.m., Plaintiff published a tweet directed at Reed. Her tweet read: "What do you mean by 'change the messaging around #CloseTheWorkhouse,' @PresReed? #STLBOA #aldergeddon2019 #WokeVoterSTL." (Compl. at ¶ 26).  By 7:13 p.m. that night,

2

Plaintiff was unable to view Reed's page. When she attempted to view his page, Twitter instead displayed a message stating: "@PresReed blocked you" and "You are blocked from following @PresReed and viewing @PresReed's Tweets." (Id.)

Plaintiff contends that Reed violated her First Amendment right to free speech when he blocked her because of her critical tweet. Reed moves to dismiss Plaintiff's complaint on three grounds: (1) his Twitter account is not a public forum; (2) this Court lacks jurisdiction to provide the injunctive relief Plaintiff requests; and (3) his actions related to his Twitter account are not "under the color of law" for the purposes of §1983.

## II.     Legal Standard

In ruling on a motion to dismiss, the Court assumes all facts alleged in the complaint are true, and liberally construes the complaint in the light most favorable to the plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008). The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. See Horras v. Am. Capital Strategies, Ltd., 729 F.3d 798, 801 (8th Cir. 2013); Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. Id.

In ruling upon a motion to dismiss, "matters outside the pleadings are not to be considered, while attachments to the pleadings can be." Kehoe v. Wal-Mart Stores E., LP, No. 4:08CV991

HEA, 2009 WL 57143, at *2 (E.D. Mo. Jan. 9, 2009). However, documents "necessarily embraced by the complaint" are not matters outside the pleading. Enervations, Inc. v. Minnesota Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004).

### III. Discussion

**A. Plaintiff plausibly states a claim that Reed's Twitter account is a public forum**

Reed argues that Plaintiff has failed to state a claim because his Twitter account is not a public forum. Plaintiff responds that the interactive portions of a public official's social media account may constitute a public forum. Taking all allegations in the complaint as true, the Court finds Plaintiff has plausibly stated a claim that the @PresReed account is a public forum.

"When the government provides a forum for speech (known as a public forum), the government may be constrained by the First Amendment, meaning that the government ordinarily may not exclude speech or speakers from the forum on the basis of viewpoint, or sometimes even on the basis of content." Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1930 (2019). There are "three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 802 (1985). Traditional public fora are "places which by long tradition or by government fiat have been devoted to assembly and debate," such as parks and sidewalks. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). A designated public forum is created by the government "intentionally opening a nontraditional forum for public discourse." Cornelius, 473 U.S. at 802. A nonpublic forum is any space "which is not by tradition or designation a forum for public communication." Perry Educ. Ass'n, 460 U.S. at 46 .

Plaintiff contends Reed's Twitter account is a designated public forum, and therefore Reed cannot restrict her access to his account based on his viewpoint. Reed urges the Court to find that

4

his Twitter account cannot be designated a public forum. He raises two arguments in support of his argument. First, he argues his tweets are government speech that cannot be separated from the interactive components of the page. Second, he argues that his Twitter account is not government property under government control; therefore, public forum analysis is inapplicable.

   1. **Government speech**

Reed argues that forum analysis is inapplicable because his tweets are government speech. He relies on the reasoning in Judge Park's dissent from the denial of rehearing en banc in Knight First Amendment Inst. v. Trump, 953 F.3d 216 (2d Cir. 2020) and Morgan v. Bevin, 298 F. Supp. 3d 1003 (E.D. Ky. 2018). In Knight, the Second Circuit determined President Trump engaged in unconstitutional viewpoint discrimination by blocking certain users for publishing tweets with which he disagreed. The court found President Trump's Twitter account was a designated public forum and "the President violated the First Amendment when he used the blocking function to exclude the Individual Plaintiffs because of their disfavored speech." Knight First Amendment Inst. v. Trump, 928 F.3d 226, 239 (2d Cir. 2019). The President petitioned for rehearing en banc and was denied. Knight, 953 F.3d 216. Judge Park dissented from the denial of rehearing, finding that President Trump's Twitter account is government speech and that therefore, the public-forum doctrine is inapplicable. Id. at 228. Although the majority found the interactive spaces associated with the President's Tweets could be analyzed alone, Judge Park argued "it would be illogical and impractical to apply forum doctrine to such scenarios by bifurcating government speech and 'interactive spaces' to require the airing of competitive views." Id. at 229.

In Bevin, the plaintiffs, citizens of Kentucky, claimed Kentucky Governor Matt Bevin infringed on their First Amendment rights by blocking them from his public Facebook and Twitter pages after plaintiffs criticized him. The court denied the plaintiffs' request for a preliminary

5

injunction, finding "Governor Bevin's use of privately owned Facebook Page and Twitter pages is personal speech, and, because he is speaking on his own behalf…the First Amendment strictures that attend the various types of government-established forums do not apply." Bevin 298 F. Supp. 3d at 1010-1011. However, the court still found the plaintiffs may succeed on the merits. Id. at 1013.

Reed claims that his use of the Twitter account to describe his activities and the activities of the City government and to express his views is government speech. He further urges this Court to adopt Judge Park's reasoning and find the interactive portion of his Twitter page cannot be analyzed separately and therefore his entire account is government speech. Reed is correct that forum analysis does not apply to government speech, Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 467-68 (2009) (citations omitted). However, forum analysis may still apply to the portions of his account that are not government speech. After consideration, this Court agrees with the reasoning of the Knight majority, which found the interactive component of a social media page may be analyzed separately from the rest of the profile for the purposes of forum analysis. Knight, 928 F.3d at 239. In "considering the interactive features, the speech in question is that of multiple individuals" and not just the government. Id. Because the President does not "exercise any control over the messages of others" in the interactive space except through blocking some users, and "the contents of the retweets, replies, likes, and mentions are controlled by the user who generates them," the interactive space is not government speech and is susceptible to forum analysis. Id.

Other courts have likewise found the interactive space of a social media page amenable to public forum analysis. A public forum can be "metaphysical" and need not have a physical location. See Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 830 (1995).  The

Supreme Court has identified social media as "the most important place[] (in a spatial sense) for the exchange of views." Packingham v. North Carolina, 137 S. Ct. 1730, 1735 (2017). The majority of courts that have addressed the issue have concluded that when a government official uses a social media account for official business, and when the interactive portions of the account are open for public comment, those interactive portions are a public forum. See, e.g., Davison v. Randall, 912 F.3d 666, 682 (4th Cir. 2019) ("aspects of the [defendant's] Facebook Page bear the hallmarks of a public forum; Campbell v. Reisch, 367 F. Supp. 3d 987, 922 (W.D. Mo. 2019) (public forum doctrine applies to state representative's Twitter Account); One Wisconsin Now at 953 ("the interactive portions of [state representatives'] respective Twitter accounts plainly constitute designated public forums."); but see, Bevin, 298 F. Supp. 3d 1003.

Having determined that the interactive component of a public official's social media account is susceptible to forum analysis, the next question for the Court's determination is whether Plaintiff has stated a plausible claim that the @PresReed Twitter account is a public forum. Courts look to the "policy and practice of the government to ascertain whether it intended to designate a place…as a public forum" and the "nature of the property and its compatibility with expressive activity." Cornelius 473 U.S. at 802. In determining what the "policy and practice" of the government entity is in setting up a social media page, courts have looked to whether the page bears "the hallmarks of a public forum." Davison, 912 F.3d at 682. In Davison, the court considered that the page was clothed "in the trappings of her public office" including the official's title, the county email address and phone number, and official county website. The Knight court found "a social media account is intentionally opened for public discussion when the [elected official], upon assuming office, repeatedly used the account as an official vehicle for governance

7

and made its interactive features accessible to the public without limitation." Knight, 928 F.3d at 237.

Plaintiff alleges facts that show Reed's Twitter account bears the hallmarks of a public forum. In particular, Reed refers to his title in the account handle and in his biography; the profile picture and banner picture both show Reed in his official capacity; the @PresReed account and the official website for the St. Louis Board of Aldermen President's Office both link to each other; and the official website displays a feed of the @PresReed Twitter posts. Plaintiff further alleges that Reed uses his account to "advertise legislative developments and community events held throughout St. Louis by the Board of Aldermen" and conduct other business related to the office. (Compl. at ¶ 19). Plaintiff's allegations, construed in the light most favorable to her, satisfy the "policy and practice" prong.

Plaintiff's claim also plausibly alleges the @PresReed Twitter account is compatible with expressive activity. Twitter accounts are compatible with expressive activity because they are interactive and constituents use these accounts to engage with their representatives. Knight at 547. See also Davison at 682 (Official's Facebook page is compatible with expressive activity). Here, Plaintiff alleges that Reed's Twitter account is used to engage with the public on political issues and to inform his constituents of important policies. Constituents interact with his posts both by responding to them directly or by engaging in discussions with other users.  Plaintiff further alleges that Reed's Twitter account is open to communications for all Twitter users except those that he specifically blocks. Opening a means of communication "for indiscriminate use by the general public" creates a public forum. Perry Educ. Ass'n, 460 U.S. at 47. Plaintiff has plausibly alleged that Reed's Twitter account is a public forum.

**2. Government property**

Reed next argues that his Twitter account is controlled by Twitter and therefore not susceptible to forum analysis. In support, Reed cites Halleck, 139 S. Ct. 1921, Hudgens v. N. L. R. B., 424 U.S. 507, 513 (1976), and Lloyd Corp., Ltd. v. Tanner, 407 U.S. 551, 567 (1972). Halleck holds that while "the government ordinarily may not exclude speech or speakers from the forum on the basis of viewpoint…when a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment." Halleck at 1930. Similarly, both Hudgens and Lloyd Corp. find First Amendment protections inapplicable when the forum at issue was controlled by a private entity. Hudgens at 513; Lloyd Corp at 567. These cases are inapposite; Plaintiff contends that Reed's Twitter is under government, not private control. It makes no difference that Twitter itself is a private company. The First Amendment protects "access to public property or to *private property dedicated to public use*." Cornelius at 801 (emphasis added). Plaintiff's claim is against Reed, not Twitter. She has sufficiently alleged Reed's Twitter account is dedicated to public use and therefore may be a public forum.

**B.     Equitable jurisdiction**

Reed next argues this Court lacks equitable jurisdiction over Plaintiff's claim for injunctive relief for two reasons. First, he contends that jurisdiction is lacking because the relief Plaintiff seeks would violate his First Amendment rights. Second, Reed argues the Court lacks jurisdiction to issue injunctive relief because Plaintiff has not alleged an irreparable harm.

Reed claims that this Court lacks jurisdiction to prohibit him from blocking Plaintiff on Twitter. He argues that there is no First Amendment right to have a government official "listen or respond to individuals' communications on public issues," Minnesota State Bd. For Comm'y Colleges v. Knight, 465 U.S. 271, 285 (1984), and that the First Amendment prohibits government mandates of access to private mediums of communication, Miami Herald Co. v. Tornillo, 418 U.S.

9

241 (1974). Thus, he claims prohibiting him from blocking Plaintiff is inconsistent with the First Amendment.

Reed's arguments are unavailing. Nowhere in her petition does Plaintiff request relief that would force Reed to listen to or respond to her messages; she only asks that Reed not block her account. Additionally, as Reed himself points out, Miami Herald applies to private mediums of communication. Plaintiff has adequately pled that the interactive portion of Reed's Twitter page is a public forum, not a private account. This Court has jurisdiction to issue equitable relief where Plaintiff contends that her access to a public forum is blocked. See Campbell, 2019 WL 3856591 (issuing injunction related to official blocking constituent on Twitter). See also Knight 928 F.3d at 580 (court has jurisdiction over claim based on the President blocking a follower on Twitter).

Reed next argues that this Court lacks jurisdiction because Plaintiff has failed to plead irreparable harm. He claims her speech was not burdened due to a number of available workarounds, such as creating a new account. The fact that there exist a number of workarounds, such as creating a new Twitter account, make no difference. See Sorrell v. IMS Health Inc., 564 U.S. 552, 565-66 (2011) (holding the difference between burdening speech and banning speech is a matter of degree); Knight 928 F.3d at 239 ("the fact that the Individual Plaintiffs retain some ability to 'work around' the blocking does not cure the constitutional violation.") A "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). See also Lowry ex rel. Crow v. Watson Chapel School Dist. 540 F.3d 752, 762 (8th Cir. 2008). Plaintiff has sufficiently alleged facts from which the Court could find irreparable harm. Therefore, the Court has jurisdiction.

### C. Action under color of law

Lastly, Reed argues that the management of his personal Twitter account is not action under color of law pursuant to §1983. He claims that because there are no ordinances or laws related to his Twitter account, the actions he takes cannot be under color of law. However, an official's conduct need not be authorized by a specific law to be considered action under color of law. See One Wisconsin Now, 354 F. Supp. 3d at 950 ("Defendants contend that the act of blocking plaintiff on Twitter was not state action because there is no Wisconsin law that specifically grants them the power to block Twitter users. Defendants' interpretation of the color of state law test is unworkable, narrow, and, simply put, silly.") (internal citation omitted)

Reed also argues that because Twitter, and not the government, created the blocking function, it is not action under color of law. To determine whether a government official's action is under color of law, courts look to the "nature and circumstances of the [official's] conduct and the relationship of that conduct to the performance of his official duties." Lee ex rel. Lee v. Borders, 764 F.3d 966, 971 (8th Cir. 2014) (internal quotation marks omitted) (citing Roe v. Humke, 128 F.3d 1213, 1216 (8th Cir. 1997). An action is taken under color of law if it is fairly attributable to a government entity. Meier v. St. Louis, 934 F.3d 824, 829 (8th Cir. 2019).

Plaintiff has adequately pled facts showing that Reed was acting under color of law in running his Twitter account. A government official acts under color of law in administering a social media page if the page is clothed in the "power and prestige of [his] state office" and administered "to perform actual or apparent duties of her office." Davison at 680-81. Plaintiff has alleged that Reed's Twitter account is clothed in the power and prestige of his office. As discussed above, the account's name, biography, and image reference Reed's position as the President of the St. Louis Board of Aldermen. (Compl. at ¶¶ 17-18). The official website for the Board of Aldermen shows Reed's Twitter feed and links to his account. (Id.). Plaintiff also alleges Reed uses his

11

account to perform duties related to his office, including informing his constituents of "legislative developments and community events" and "critical public health/safety updates. (Id. at ¶ 19). These facts are sufficient to state a plausible claim that Reed's action in blocking her from his Twitter account was taken under color of law. See Davison at 681; Campbell at 995.

### IV. Conclusion

Plaintiff plausibly alleges that Reed's Twitter account is a public forum. Although Reed's tweets are government speech, the interactive space associated with the tweets is not. Further, Plaintiff has plausibly alleged that Reed's account is under government control. This Court has jurisdiction to hear claims alleging a violation of First Amendment Rights. Finally, Plaintiff's complaint adequately alleges that Reed acted under color of law when he blocked her on Twitter. Reed's motion to dismiss will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Lewis E. Reed's Motion to Dismiss (Doc. No. 11) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Lewis E. Reed shall file an answer to Plaintiff's complaint within fourteen (14) days of the date of this Order.

Dated this 1st day of December, 2020.

*(signature)*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**