**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH FELTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4:20-cv-00821-JAR |
| | ) | |
| LEWIS REED, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR SANCTIONS</u>**

Plaintiff clearly knows the value of a good lawyer. But even the best lawyer cannot do much for her client if she knows absolutely nothing about the case, and that's even more true if the lawyer and client have not even met. But what's good for the goose is good for the gander. Plaintiff's submissions to this Court in support of her Motion for Sanctions [Doc. No. 60] demonstrate that: 1) Defendant's counsel changed on July 1, 2021; 2) on that same date, Plaintiff demanded that a deposition of Defendant be scheduled in a matter of weeks; 3) Defendant's new lawyer, the undersigned, had not had the opportunity to even meet with his new client to familiarize himself either with the client personally or  the facts of the case; 4) that the undersigned was trying to get dates from his client, but could not; 5) that the close of the legislative term of the Board of Aldermen, of which Defendant is *the President*, coincided with the time frame Plaintiff demanded a deposition be conducted; 6) that Defendant's counsel offered numerous options to the scheduling of a deposition within that few-week timeframe, all of which were rejected; and 7) that Defendant's counsel

specifically informed Plaintiff's counsel that he had a deposition already scheduled the day Plaintiff unilaterally scheduled the deposition. With all this knowledge, and with exceptionally capable counsel, Plaintiff claims to be shocked and hurt that she could not take Defendant's deposition on her preferred date. Now, over a month later, with Defendant's deposition in fact complete, Plaintiff asks this Court to sanction him for "failing" to appear at a deposition she *knew* neither he nor his counsel could attend. The Court should deny the Motion.

As Defendant's counsel stated during the status conference on August 24, 2021, he did everything he could to get dates from President Reed in the narrow time frame Plaintiff demanded the deposition occur. There was no attempt to block or delay a deposition. Even as Plaintiff's very selective emails submitted with her Motion make clear, Defendant's counsel was accommodating and flexible and willing to cooperate to the extent that he could. Defendant's counsel explained to Plaintiff the challenges imposed by Plaintiff's own insistence that a deposition occur within some arbitrary time frame. Defendant's counsel offered several alternatives, all of which were rejected. Defendant's counsel further offered to file a consent motion to extend deadlines, which was also rejected. Again, Defendant's current counsel was only notified on June 25th that he would be assuming representation of Defendant, and yet a couple of weeks later, Plaintiff was already unilaterally scheduling a deposition knowing the date would not work. This is simply not reasonable.

Plaintiff makes much of the fact that Defendant had more flexibility to schedule a mediation. Plaintiff overlooks the facts that, in a mediation, none of the

statements made by the parties are binding, the lawyers do virtually all the talking, and at least half the time the parties have nothing to do—meaning, the client is free to do other work until the mediator returns. Further, the mediation itself would have been a good time for the undersigned to meet and confer with his client about the facts of the case and his goals for the litigation. A deposition, by contrast, could doom the client if the lawyer is not prepared.

Additionally, this case is not the only matter assigned to Defendant's counsel. In fact, the undersigned has a Federal trial that is set to "go" on the 27th of this month, yet he is required to take time away from trial preparation to address this Motion. By the time the undersigned assumed Defendant's representation, written discovery had been completed, four depositions had been taken, and a not insignificant amount of motion practice had occurred. Defendant's counsel had barely any time to even familiarize himself with this bulging file, let alone meet with this client, but Plaintiff demanded the deposition occur in a couple of weeks. Unlike Plaintiff's counsel, Defendant's counsel cannot pick and choose his cases. Nor does the undersigned have the luxury of a team of law students to help him—he doesn't even have co-counsel. Yet Plaintiff seeks to punish both him and his client because they could not get dates for a deposition in a couple of weeks.

Furthermore, it must be stressed that Defendant has in no way sought to limit or restrict Plaintiff from taking his deposition. Indeed, quite the opposite. Defendant willingly acquiesced in permitting Plaintiff a full seven hours to take his deposition, despite the fact that the entire incident that initiated this lawsuit took less than a

second. Defendant could have sought a protective order in advance just to limit the amount of time Plaintiff could depose him. Plaintiff demanded a deposition during the closing weeks of the legislative term of the City's Board of Aldermen, of which Defendant Reed is its City-wide elected presiding officer. A protective order could have been sought simply on the grounds that a deposition in the timeframe Plaintiff demanded it would have "significantly interfere[d] with the ability of the official to perform his governmental duties." *Sheindlin v. Brady*, No. 1:21-cv-01124 (LJL) (SDA), 2021 U.S. Dist. LEXIS 97975, at *8 (S.D.N.Y. May 24, 2021) (citation omitted); *Sargent v. City of Seattle*, No. C12-1232 TSZ, 2013 U.S. Dist. LEXIS 65356, at *5 (W.D. Wash. May 7, 2013). Defendant elected not to, knowing that a deposition would eventually be scheduled, and trusting that Plaintiff would not abuse Defendant's time. Even though that turned out not to be the case, Defendant *still* did not seek to limit in any way Plaintiff's time to depose him.

The undersigned fully admits that he is a bit old-fashioned in his approach to practicing law. Honor, integrity, and courtesy to opposing counsel constitute the very foundation of that philosophy. Arguably in this era of scorched-earth *everything*, this places him and his clients at something of a disadvantage. Nevertheless, the law and the rules that govern civil procedure and the practice of law are predicated upon an assumption that they will not by cynically manipulated, and that litigants and officers of the court will act reasonably and with at least some modicum of respect for the opposing side. The entire system will breakdown if that assumption of basic decency is abandoned.

It should seem obvious that a lawyer who inherits a case and a client from another, and who schedules that client for a deposition *without ever meeting with or talking to that client* would be subject to a malpractice complaint. Yet here we are. Despite wasting Defendant's time with duplicative and cumulative questions about random tweets, Plaintiff still wants her pound of flesh. Under the totality of the circumstances, equity and good conscience demand that Plaintiff's Motion for Sanctions be denied.

Respectfully submitted,

**MATT MOAK**
**CITY COUNSELOR**

By: _____/s/ Steven R. Kratky_____
Steven R. Kratky, #61442MO
Assistant City Counselor
City of St. Louis Law Department
City Hall  |  Room 314
Saint Louis MO  63103
Tele: 314-622-4618
Fax:  314-622-4956
KratkyS@stlouis-mo.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and complete copy of the foregoing was served upon all counsel of record via the Court's electronic filing system on this 2nd day of September, 2021.

_____/s/ Steven R. Kratky_____