**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH FELTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4:20-cv-00821-JAR |
| | ) | |
| LEWIS REED, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The crux of this case, and thus the determinative issue now before this Court, is whether Lewis Reed was acting in his official capacity as President of the Board of Aldermen of the City of St. Louis when he blocked Plaintiff on Twitter. There is no dispute that Lewis Reed blocked Plaintiff on Twitter. There is no dispute that Lewis Reed blocked Plaintiff because of his objection to the content of her statement. There is no dispute that Lewis Reed in fact held the office of President of the Board at the time he blocked Plaintiff on Twitter. These are the core material facts. What *is* in dispute is the inferences to be drawn from those undisputed facts, or perhaps even more precisely the legal conclusions to be drawn from those undisputed facts. Plaintiff cannot be granted summary judgment because she fails to demonstrate—indeed, *cannot* demonstrate—that she is entitled to judgment as a matter of law. Accordingly, Plaintiff's Motion for Summary Judgment must be denied. [Doc. 75].

I.     PLAINTIFF CANNOT ESTABLISH *MONELL* LIABILITY AGAINST THE CITY OF
       ST. LOUIS AND THEREFORE IS NOT ENTITLED TO JUDGMENT AS A MATTER
       OF LAW

Plaintiff sued Lewis Reed in his official capacity only. Defendant's Statement
of Additional Material Facts "(DSAMF"), *infra*, ¶ 21. However, a suit against an
official in his or her official capacity is *de jure* only a suit against the government
entity itself. In this instance, the governmental entity is the City of St. Louis, a
municipality. The Supreme Court has held that municipalities may only be held liable
under 42 U.S.C. § 1983 only if it can be established that the violation was caused by
a policy or custom of the entity. ***Monell v. Dep't of Soc. Servs.***, 436 U.S. 658, 694
(1978). Plaintiff cannot establish that Mr. Reed's act of blocking her on Twitter was
caused by a policy or custom of the City of St. Louis, and accordingly her claim fails
as a matter of law. Accordingly, Plaintiff's Motion for Summary Judgment must be
denied.

A "core tenet of 42 U.S.C. § 1983 jurisprudence is that an official-capacity suit
against an individual is really a suit against that official's government entity." ***Banks
v. Slay***, 875 F.3d 876, 878 (8th Cir. 2017). In this case, the government entity is the
City of St. Louis, a municipality. However, § 1983 liability attaches against
municipalities only when the complained-of injury is directly caused by the "execution
of a government's policy or custom, whether made by its lawmakers or by those whose
edicts or acts may fairly be said to represent official policy." ***Monell***, 436 U.S. at 694
(1978). Plaintiff has not and cannot establish any facts in support of *Monell* liability.

Plaintiff sued Mr. Reed *only* in his official capacity as President of the Board of Aldermen of the City, and not in his individual or personal capacity. DSAMF, ¶ 21. In *Banks, supra*, the Eighth Circuit noted that it has "remained faithful to the Supreme Court's holding that an official-capacity suit is a suit against the government entity 'in all respects other than name.'" ***Banks***, 875 F.3d at 881 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("as long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")). Accordingly, Plaintiff's § 1983 claim now before this Court is "in all respects other than name" against the City itself.

However, as a general matter, municipalities cannot be held vicariously liable under § 1983 for the actions of their officers and employees. ***Clay v. Conlee***, 815 F.2d 1164, 1172 (8th Cir. 1987). Instead, municipalities are liable under § 1983 only when "official municipal policy of some nature caused a constitutional tort." ***Monell***, 436 U.S. at 691. Liability under § 1983 will lie against municipalities *only* "for acts for which the municipality itself is actually responsible, that is, acts which the municipality has officially sanctioned or ordered." ***St. Louis v. Praprotnik***, 485 U.S. 112, 123 (1988).

The clearest and surest means by which a municipality may establish a policy is through its legislature. "No one has ever doubted…that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body…because even a single decision by such body unquestionably constitutes an act

of official government policy." ***Pembaur v. City of Cincinnati***, 475 U.S. 469, 480 (1986).

Here, Plaintiff can point to no City policy enacted by its Board of Aldermen regarding the use of Twitter or other social media by its officers and employees. Plaintiff can point to no official policy adopted by the City through the Board which instructs or mandates its officers and employees to block or censor persons on social media platforms. In any event, Plaintiff has not pleaded that Mr. Reed acted pursuant to, or otherwise in accordance with, some officially-enacted policy of the City. Accordingly, Plaintiff cannot maintain a *Monell* claim against Mr. Reed in his official capacity under the "official policy" theory.

Further, Plaintiff has not alleged that it is a "custom" of the officers and employees of the City to "block" persons on Twitter for *any* reason, let alone for a reason based on viewpoint discrimination, or that the City failed to train or inadequately trained its personnel on the appropriate use of social media in light of First Amendment considerations, and thus Plaintiff cannot establish *Monell* liability on these theories either. *See **Corwin v. City of Indep.**,* 829 F.3d 695, 699 (8th Cir. 2016) (listing custom and failure to train as additional means of establishing *Monell* liability).

The only remotely plausible claim Plaintiff can assert to establish *Monell* liability is that Mr. Reed is a "final decisionmaker." Yet even here, Plaintiff misses the mark. Municipal liability under § 1983 may lie in the absence of an official policy if the individual who is alleged to have violated a Constitutional right has "final

policymaking authority" such that the municipality can be said to have effectively enacted a formal policy violative of that right. ***Praprotnik***, 485 U.S. at 123. The question of whether an individual possesses "final policy making authority" is one of "state law." ***Id.*** Most crucially, the question of whether an individual has "final policy making authority" so as to bind his or her principal turns upon whether the challenged act was taken by an individual who has the authority "under state law" to enact policy on behalf of the municipality "*in that area of the city's business.*" ***Id.*** (emphasis added).

Mr. Reed does not have "final policy making authority" for the City on *any* matter. To be sure, the office of the President of the Board of Aldermen is one of great importance, prestige, and influence within the City. Nevertheless, the Charter of the City vests virtually no affirmative powers in the office of its Board President. The Charter vests the "legislative power" of the City in "a board of aldermen," which consists of "a president" and "twenty-eight members." DSAMF, ¶ 22. The sole power explicitly granted by Charter to the President of the Board is that he or she "shall preside at all meetings." DSAMF, ¶ 23. The City's Board President is granted no other explicit power under the Charter to unilaterally cause anything to be done within the government of the City. *See* DSAMF, ¶¶ 22-24. Like any other member of the City's Board of Aldermen, Mr. Reed's principal power as vested by the Charter is the ability to cast but a single vote in a legislative body of twenty-nine members.

In contrast to the Board President, the Mayor of the City is granted numerous explicit powers as its "chief executive officer":

> The mayor…shall have and exercise all the executive power of the city. He shall exercise a general supervision over all the executive affairs of the city and see that each officer and employee performs his duty and that all laws, ordinances, and charter provisions are enforced….He shall appoint and may remove all nonelective officers and all employees…and see that all contracts with the city are performed….He shall have a seat and voice and may introduce ordinances…in the board of aldermen….[and] may remit, with or without condition, fines costs, forfeitures and penalties imposed for violation of any ordinance….[and he] may examine the affairs and conduct of any department, board or office and require all officers to exhibit their accounts and papers and make reports to him.

DSAMF, ¶ 24. It is clear then that Mr. Reed, even though he holds the office of President of the Board of Aldermen, does not have the unilateral authority or ability to enact policy of the City. Instead, that power is vested in the City's Board of Aldermen and Mayor acting together through the passing and signing of bills into ordinances. *See **Praprotnik***, 485 U.S. at 125.

But even if Mr. Reed were considered a "policymaker" in the broadest possible sense, that fact alone would still be insufficient to establish *Monell* liability here against the City. Generally, a "single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." ***Schmidt v. City of Bella Villa***, No. 4:06-CV-265-SNL, 2007 U.S. Dist. LEXIS 97488, at *28-29 (E.D. Mo., Aug. 13, 2007). A single decision of a municipal officer can create *Monell* liability against a municipality only when that officer is the "highest official[] *responsible for setting policy in that area of the government's business*." ***Stockley v. Joyce***, 963 F.3d 809, 823 (8th Cir. 2020) (emphasis added) (citing *Bernini v. City of St. Paul*, 665 F.3d 997,

1007 (8th Cir. 2012)). A municipal official creates a "policy" to establish *Monell* liability only when there is a "*deliberate choice* of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." ***Id.*** (emphasis added) (citing *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)). President Reed has no special authority regarding policies concerning the First Amendment or social media usage, but has simply the power of casting a single vote in a body over which he presides. Mr. Reed's single instance of "blocking" Plaintiff on Twitter was hardly a "deliberate choice of guiding principle or procedure," but instead was an in-the-moment reaction.

In contrast, when analyzing examples where a single act by a municipal official was sufficient to establish *Monell* liability, the Eighth Circuit found: "a prison director failing to discipline officers, *Ware v. Jackson County*, 150 F.3d 873 (8th Cir. 1998), a mayor ordering the unlawful removal of citizens, *Hollins v. Powell*, 773 F.2d 191 (8th Cir. 1985), [and] a police superintendent making final human resources decisions. *Angarita v. St. Louis County*, 981 F.2d 1537 (8th Cir. 1992)." ***Granda v. City of St. Louis***, 472 F.3d 565, 568-569 (8th Cir. 2007). In each of these instances where a court found a government actor to be a "final policymaker," the actor in question had some executive power vested in them by virtue of their office to take the challenged action that was tantamount to action by the government itself. Mr. Reed is a legislator, not an executive, and he does not have any authority vested in him by virtue of his office of President of the Board to set policy regarding social media that can fairly be said to be the policy of the City itself. Accordingly, Plaintiff cannot

establish that Mr. Reed's single instance of blocking her was effectively the policy of the City such that *Monell* liability is established.

In suing Mr. Reed under § 1983 in his official capacity only, Plaintiff seeks to impose liability upon the City itself. Under *Monell*, however, a municipal entity can be liable under § 1983 *only* if a plaintiff can attribute the Constitutional violation to the "government's policy or custom." ***Monell***, 436 U.S. at 694. Plaintiff has not and cannot proffer any undisputed facts that any alleged Constitutional violation herein was caused by a policy or custom of the City of St. Louis, and accordingly her claim fails as a matter of law. Her motion for summary judgment must be denied.

II.   DEFENDANT LEWIS REED DID NOT ACT "UNDER COLOR OF LAW" WHEN HE BLOCKED PLAINTIFF FROM HIS PERSONAL TWITTER ACCOUNT

Plaintiff fails to demonstrate that she is entitled to judgment as a matter of law in that she cannot establish that Lewis Reed acted "under color of law" when he blocked her from his personal Twitter account. Section 1983 imposes liability upon individuals who cause a "deprivation of any rights, privileges, or immunities secured by the Constitution" of the United States "under color of any statute, ordinance, regulation, custom, or usage, of any State." **42 U.S.C. § 1983**. Thus, an essential element of any § 1983 action is that the defendant "acted under color of state law," meaning that the government employee or official "exercised power possessed by virtue of state law and made possible only because the wrongdoer is closed with the authority of state law." ***Magee v. Trs. of the Hamline Univ.***, 957 F. Supp. 2d 1047, 1055 (D. Minn. 2013) (quoting *Johnson v. Phillips*, 664 F.3d 232, 239-240 (8th Cir. 2011) (internal editorial marks omitted). The test to determine whether a

governmental actor satisfies the "color of state law" requirement has also been phrased as: whether "he abuses the position given to him by the State," such as when "acting in his official capacity or while exercising his responsibilities pursuant to state law"; or when the actor "acts or purports to act in the performance of official duties, even if he oversteps his authority and misuses power." ***Id.*** (citations omitted). If, however, a governmental actor acts purely "in the ambit of their personal pursuits," § 1983 liability does not attach. ***Id.*** (citations omitted); ***Campbell v. Reisch***, 986 F.3d 822, 824 (8th Cir. 2021).

The Eighth Circuit has held that to determine whether "an official acts under color of law," the courts must examine whether there is a "sufficient nexus…between the official's public position and the official's harmful conduct." ***Ramirez-Peyro v. Holder***, 574 F.3d 893, 900 (8th Cir. 2009) (citation omitted). "Absent any actual or purported relationship between the officer's conduct and his duties" as an official of the government, the official "cannot  be acting under color of state law. ***Roe  v. Humke***, 128 F.3d 1213, 1216 (8th Cir. 1997).

Lewis Reed's Twitter account was not an official account of the Office of the President of the Board of Aldermen. DSAMF, ¶¶ 4-19, 25. The City of St. Louis has a policy regarding the creation of social media accounts that are to be held out as "official" accounts of City government, and requires that the appointing authority formally authorize such creation. DSAMF, ¶ 25. In contrast, Lewis Reed created his account on his own initiative, and for his own personal purposes. DSAMF, ¶ 4. As the officeholder, he is the appointing authority for his "department", and he simply did

not create the account at issue through that formal process for purposes of establishing an official account. By not following the City's policy regarding the creation of "official" City accounts, Lewis Reed's account *cannot* be considered an official account. Further, neither the City Charter nor its ordinances compel Lewis Reed to maintain a Twitter account in his capacity as Board President. In short, in no way is Lewis Reed's Twitter account an official account of the City of St. Louis or the Office of the President of the Board of Aldermen.

The way in which Lewis Reed uses his account further support the fact that it was his personal account, and not an official one. For example, Mr. Reed changed the "handle" of the account to reflect offices which he sought, including "Reed4Mayor." DSAMF, ¶ 6. Mr. Reed does not view Twitter as a good means to communicate with his constituents, and instead uses it to communicate primarily with the press, as well as his family and others known to him who are located across the United States. DSAMF, ¶¶ 7-9. Mr. Reed did not hire or fire anyone through tweets. DSAMF, ¶ 11. He introduced no board bills through tweets, did not participate in committee hearings via Twitter, did not cast votes on measures before the Board via tweet, did not censure members or exclude individuals from the floor of the Board through tweets, nor did he officially communicate with other City officials via tweet, nor did he ever represent that his tweets are "official statements" of the Board President. DSAMF, ¶ 16. *Cf.* ***Knight First Amendment Inst. at Columbia Univ. v. Trump***, 928 F.3d 226, 231-232 (2d Cir. 2019) (observing that the Trump Administration represented to the world that Trump's tweets were "official statements" of the

President of the United States). The photos he used for his profile pictures on Twitter were taken in the context of an electoral race, and were paid for by his campaign. DSAMF, ¶ 10. Mr. Reed's biographical information stated that he is: a "Father of 4 great kids, husband, public servant, life long democrat, proud St. Louis City resident," and, dead last: "President of the Board of Aldermen." DSAMF, ¶ 5. Mr. Reed prefers to use the social media site "NextDoor" to communicate with his constituents in the City in his capacity as President of the Board. DSAMF, ¶ 9. He has never used Twitter to issue orders or directives to his staff. DSAMF, ¶ 15. The totality of these circumstances dictates that Mr. Reed used his Twitter account in "the ambit of [his] personal pursuits." *Reisch*, 986 F.3d at 824. Accordingly, Lewis Reed categorically rejects and vigorously disputes Plaintiff's declarations that he "consistently used the Account to perform actual or apparent duties of his office," and that he used it "as an online extension of his role as President of the Board of Aldermen." [Doc. 76-1, pageID 300].

Plaintiff's argument that Mr. Reed was acting in an official capacity when he blocked her on Twitter relies principally upon the facts that his Twitter account referenced the fact that he is the President of the Board of Aldermen, and that he would discuss City business on Twitter, yet these facts are "fully consistent" with a campaign account or other personal account of a person who happens to be a politician. *Reisch*, 986 F.3d at 826. The simple fact that Lewis Reed was President of the Board of Aldermen when he blocked Plaintiff from his Twitter account does not *ipso facto* make that action one made "in his official capacity or while exercising his

responsibilities pursuant to state law" or otherwise "in the performance of official duties." ***Magee***, 957 F. Supp. 2d at 1055; ***Reisch***, 986 F.3d at 825. Plaintiff's stray citations to a one-off Tweet in which Mr. Reed tagged the Missouri Governor, or included a screen shot of a *formal letter on official letterhead* to another City official do not transubstantiate his personal account into an official one. *See* Plaintiff's SUMF, ¶ 93. At best, Plaintiff can only argue that one can *infer* from the undisputed material facts that Mr. Reed viewed or used his Twitter account as an organ or instrumentality of his office, but this is insufficient to meet the standard for summary judgment. All inferences must be drawn in Mr. Reed's favor. Accordingly, Plaintiff has failed to meet her burden that she is entitled to judgment as a matter of law, and her motion for summary judgment must be denied.

III.   PLAINTIFF CANNOT OVERCOME THE HIGH BURDEN TO OBTAIN EQUITABLE RELIEF; PLAINTIFF'S REQUESTS FOR EQUITABLE RELIEF ARE NOT NARROWLY TAILORED

Plaintiff has failed to demonstrate entitlement to judgment as a matter of law as the foregoing analysis proves, and her motion for summary judgment should be denied. However, should the Court hold otherwise, the equitable relief Plaintiff requests goes far beyond what little harm Plaintiff alleges to have suffered. Specifically, Plaintiff asks this Court to order Lewis Reed to: 1) unblock *all* persons who have ever been blocked by him, regardless of the reason; 2) never use, or allow employees or agents to use, any social media account that "has been accessed, promoted, or supported using any resources of the City of St. Louis" in such a way that allows *any* user to "directly or indirectly modify, alter, change, restrict, limit or

otherwise influence" *another* user's ability to "access the interactive component of such account" or for *any* user to "directly or indirectly modify, alter, change, restrict, limit, or otherwise influence" *another* user's "access to the platform or to particular content, users, features, or functionality available on the platform" in a manner "that allows any access or degree of access to one or more users but fewer than all users"; and 3) submit quarterly reports to Plaintiff's lawyer *in perpetuity* regarding any persons blocked by the President of the Board of Aldermen (or his or her agents) for making a "true threat." [Doc. 75, ¶¶ B-C]. These requests should be denied because Plaintiff did not request such relief in her Complaint, and only now on summary judgment requests this Court to impose several additional and extremely burdensome restrictions on Lewis Reed's speech. At such a late hour, after discovery has closed, Plaintiff cannot unilaterally change such a material aspect of this litigation, and so all equitable relief requested by Plaintiff in her Motion for Summary Judgment should be denied for this reason alone. Moreover, each of these remedies goes far beyond the harm Plaintiff alleges to have suffered, and Plaintiff's request for same should be denied for this additional reason.

Injunctive relief is a "drastic and extraordinary remedy that is not to be routinely granted." ***Duvall v. EcoQuest Int'l, Inc.***, No. 4:06 CV 1168 DDN, 2008 U.S. Dist. LEXIS 91843, at \*24 (E.D. Mo. Nov. 12, 2008) (citing *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)). Even if a plaintiff can satisfy the heavy burden of establishing entitlement to injunctive relief, such relief "must be narrowly tailored. . . to remedy only the specific harms shown by the plaintiffs,

rather to enjoin all possible breaches of the law." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1022-23 (8th Cir. 2015). "There is no power, the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction." *Duvall*, at *24 (quoting *Truly v. Wanzer*, 46 U.S. 141, 142, (1847)). Plaintiff has not established an entitlement to injunctive relief in general, and her specific requests are not "narrowly tailored" to address the harms she alleges she suffered.

First, Plaintiff requests that this Court order Lewis Reed to "reverse any blocking of any user." [Doc. 75, B.1]. Plaintiff thus asks this Court to order Lewis Reed to unblock persons who have used racial epithets, called for violence, or otherwise engaged in non-protected speech. It is unclear why Plaintiff would demand that *all* blocked persons be unblocked, regardless of the reason they were blocked in the first place, but in any event this demand is unreasonable and is not narrowly tailored to address the specific harm that Plaintiff alleges to have suffered.

Plaintiff's second request for injunctive relief [Doc. 75, ¶ B.2.] is less clear. However, the requested relief is directed not to Lewis Reed, but instead to the President of the Board of Aldermen, with no time limitation. Whatever it is that Plaintiff is asking this Court to prohibit, the party Plaintiff asks this Court to bind is whoever holds the office of the President of the Board of Aldermen, even if such person is not Lewis Reed. Even more astonishingly, Plaintiff asks this Court to prohibit any *employee* of the President of the Board of Aldermen from using *any* account in such a way as to limit some third party's ability to access that account, regardless of the

circumstances, and again this has no time limitation. In other words, Plaintiff asks this Court to enjoin whoever will be the secretary to the Board President one hundred years from now from blocking persons from his or her own personal account. This requested relief is wildly overbroad and is not narrowly tailored to redress Plaintiff's alleged injury.

In Plaintiff's third requested injunctive relief, Plaintiff asks this Court to compel Lewis Reed to submit quarterly reports of all persons blocked by the President of the Board of Aldermen (or his or her agents) to Plaintiff's lawyer quarterly reports—in perpetuity. Again, Plaintiff asks this Court to enjoin not Lewis Reed, but whoever holds the office of Board President. Plaintiff does not explain why Lewis Reed should submit quarterly reports to Plaintiff's lawyer regarding accounts blocked by an office he may not even hold in the future. Plaintiff fails to articulate any reason why Plaintiff's counsel—whoever that may be in the future—should be appointed by this Court to be a special free speech ombudsman with oversight over only the Office of the President of the Board of Aldermen of the City of St. Louis. Plaintiff offers zero justification for the comically onerous requirement to submit reports to a private third party four times per year, every year, forever, but it is facially apparent that this request also strays far beyond the "narrowly tailored" remedy required of injunctive relief.

Such extreme and burdensome relief is further unwarranted under the circumstances. Lewis Reed has had bona fide death threats. [DSAMF, ¶ 27]. It is therefore eminently reasonable that he would adopt a "zero tolerance" stance towards

language that even hinted at violence. Plaintiff expended considerable resources attempting to paint Mr. Reed as irrational and obtuse in his interpretation of the term "Aldergeddon". [Plaintiff's SUMF, ¶¶ 130-167]. Yet Mr. Reed's life experiences do not permit him the luxury of being as cavalier about words as those in positions of comfortable privilege. [DSAMF, ¶ 27]. Indeed, in the last few years, people have quite literally *died* as a result of overheated rhetoric that recklessly employs references to physical violence.[1] While Plaintiff and the chattering classes might view "Aldergeddon" as a clever pun, Lewis Reed reasonably views the term as reckless and irresponsible, especially in these tense times.[2]

Moreover, as Plaintiff's own exhibits introduced in support of her motion for summary judgment demonstrate, Lewis Reed is frequently the target of criticism, ridicule, and opposition on social media, and yet those other persons who have expressed disagreement or disapproval without resorting to violent rhetoric were not blocked. [*See, e.g,* Plaintiff's Ex. 35, Doc. 77-3, pageID 586; Plaintiff's Ex. 37, Doc. 77-3, pageID 591]. Plaintiff's claim that Lewis Reed blocked her because she asked him a question about his views on closing the Workhouse are defeated by her own exhibits, especially considering those same exhibits show criticism directed towards Mr. Reed on that very topic, and this fact further militates against the drastic remedy of a permanent injunction.

---

[1] *See, e.g.,* https://www.newsweek.com/donald-trump-capitiol-riot-incited-suspects-1567808
[2] *See* https://www.reuters.com/investigates/special-report/usa-election-threats/   and https://www.nbcnews.com/politics/national-security/domestic-extremists-pushing-violence-against-congress-school-health-officials-dhs-n1283672

Accordingly, should this Court grant Plaintiff's Motion for Summary Judgment, it should not grant any injunctive relief requested by Plaintiff.

IV.   CONCLUSION

In moving for summary judgment, Plaintiff is obligated to demonstrate both the absence of a dispute of material fact and that she is entitled to judgment as a matter of law on the basis of those facts. **FED. R. CIV. P. 56(a).** Plaintiff has not and cannot demonstrate that she is entitled to judgment as a matter of law because she cannot establish *Monell* liability against the City of St. Louis, and because Defendant Reed did not act "under color of law" when he blocked her from his Twitter account. Accordingly, Plaintiff's Motion for Summary Judgment [Doc. 75] and requests for equitable relief should be denied.

Respectfully submitted,

**SHEENA HAMILTON**
**CITY COUNSELOR**

By: ____/s/ Steven R. Kratky_____
Steven R. Kratky, #61442MO
Assistant City Counsel
City of St. Louis Law Department
City Hall  |  Room 314
Saint Louis MO  63103
Tele: 314-622-4618
Fax:  314-622-4956
KratkyS@stlouis-mo.gov

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and complete copy of the foregoing was served upon all counsel of record via the Court's electronic filing system on this 10th day of November, 2021.


       /s/ Steven R. Kratky