**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH FELTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-821-JAR |
| | ) | |
| LEWIS E. REED, | ) | |
| ST. LOUIS BOARD OF ALDERMEN, | ) | |
| PRESIDENT, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT REED'S RESPONSE TO
PLAINTIFF'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

Defendant Lewis Reed, by and through the undersigned, pursuant to Federal Rule of Civil Procedure 56, Local Rule 7-4.01, and this Court's Orders [Docs. 58, 69, 86], responds to Plaintiff's Statement of Uncontroverted Material Facts below, in bold-faced type, beneath each of Plaintiff's individually numbered paragraphs, as follows:

1.      Plaintiff Sarah Felts is a City of St. Louis resident. Exhibit 1, Transcript of Deposition of Sarah Felts, 6:14–17.

**RESPONSE: ADMITS.**

2.      Ms. Felts is a political activist. *Id.* at 32:10–13.

**RESPONSE: ADMITS.**

3.      Defendant Lewis Reed is currently the President of the Board of Aldermen for the City of St. Louis. Exhibit 2, Defendant Lewis Reed's Responses to First Interrogatories, No. 1.

**RESPONSE: ADMITS.**

4.      President Reed was elected as President of the Board of Aldermen for the City of St. Louis in 2007. Exhibit 3, Transcript of Deposition of Lewis Reed, Volume I, August 13, 2021, 22:8–10.

**RESPONSE: ADMITS.**

5.      President Reed has been President of the Board of Aldermen for the City of St. Louis since 2007. *Id.* at 22:11–15.

**RESPONSE: ADMITS.**

6.      The Office of the President of the Board of Aldermen currently has four employees: Maurice Falls, Mary Cullins, Mary Goodman, and Thomas Shepard. *Id.* at 23:1–9.

**RESPONSE: ADMITS.**

7.      Those four employees have all been employed in their current positions since at least January 2019. *Id.* at 23:10–16.

**RESPONSE: ADMITS.**

8.      Thomas Shepard is the Special Assistant to the Office of the President of the Board of Aldermen. Exhibit 4, Transcript of Deposition of Thomas Shepard, 6:10–13, 13:20–24.

**RESPONSE: ADMITS.**

9.      Mr. Shepard's position is informally referred to as "Chief of Staff." *Id.* at 15:8–9.

**RESPONSE: ADMITS.**

10.      Mr. Shepard has been in that job for 14 years. *Id.* at 12:25–13:2.

**RESPONSE: ADMITS.**

11.      Mr. Shepard reports directly to President Reed. *Id.* at 13:3–4.

**RESPONSE: ADMITS.**

12.      Mary Goodman is the legislative director for the Office of the President of the Board of Aldermen. Exhibit 5, Transcript of Deposition of Mary Goodman, 6:7–11.

**RESPONSE: ADMITS.**

13.     Ms. Goodman has worked in that position for over four years. *Id.* at 9:6–7.

**RESPONSE: ADMITS.**

14.     Ms. Goodman's direct supervisor is Mr. Shepard. *Id.* at 9:11–13.

**RESPONSE: ADMITS.**

15.     Ms. Goodman is the primary person responsible for public communications in President Reed's office. *Id.* at 10:23–11:1.

**RESPONSE: OBJECTION. The materials cited do not support this statement of fact. Ms. Goodman testified that she "field[s] media questions," organizes "press conferences," and serves as the "public relations manager" for the President of the Board of Aldermen, among other responsibilities as assigned, but this does not establish that she is the "person responsible" for public communications in the President's office.**

16.     President Reed has ultimate authority over the four employees in the Office of the President of the Board of Aldermen, including Mr. Shepard and Ms. Goodman. Ex. 3, 24:5–7.

**RESPONSE: ADMITS.**

17.     As President of the Board of Aldermen for the City of St. Louis, President Reed has the power to "appoint standing and special committees, and shall serve as a member of all committees with the same rights of other members" and "assign bills to appropriate committees and refer bills, when ready, to the Engrossment Committee." Exhibit 6, Rules of the St. Louis Board of Alderman 2021 – 2022 Legislative Session, Rule 2.1; Exhibit 7, Rules of the St. Louis Board of Alderman 2020 – 2021 Legislative Session, Rule 2.1.

**RESPONSE: ADMITS.**

18.     As President of the Board of Aldermen for the City of St. Louis, President Reed has the power to assign "duties" to the Board of Aldermen Floor Leader. Ex. 6, Rule 2.3.

**RESPONSE: ADMITS.**

## TWITTER FEATURES AND POLICIES

19.     Twitter is a social media platform that allows users to publish short messages called "tweets." Exhibit 8, Defendant's Answer, ¶ 11.

**RESPONSE: ADMITS for purposes of summary judgment only.**

20.     Twitter allows users to repost ("retweet") and respond to tweets posted by users with public profiles, including many government officials. *Id.* ¶ 11.

**RESPONSE: ADMITS for purposes of summary judgment only.**

21.     "Twitter users can also respond to and interact with other users in relation to such public tweets." *Id.* ¶ 11.

**RESPONSE: ADMITS for purposes of summary judgment only.**

22.     Twitter users must create an account in order to create tweets. Tweets a user posts are stored on that account's profile page. Exhibit 9, Twitter New User FAQs, at 1–2 (available at https://help.twitter.com/en/resources/new-user-faq).

**RESPONSE: ADMITS for purposes of summary judgment only.**

23.     Every Twitter account is assigned a unique account ID number. Exhibit 56, Defendant's Twitter Archive Native Production, "readme.txt" file (identifying 27172787 as account ID for the Account and explaining account ID is "a unique identifier for the account"), at 1, 2.

**RESPONSE: ADMITS for purposes of summary judgment only.**

24.     Every Twitter account has a unique username or "handle" that identifies and differentiates it. Exhibit 11, Twitter User Guide: "Signing up With Twitter," at 7 (available at https://help.twitter.com/en/using-twitter/create-twitter-account).

**RESPONSE: ADMITS for purposes of summary judgment only.**

25.      The "username . . . is the name . . . followers use when sending replies, mentions, and Direct Messages." *Id.* at 7.

**RESPONSE: ADMITS for purposes of summary judgment only.**

26.      Twitter users may change their usernames. Ex. 3, 42:4–14; *see also* Exhibit 57, Twitter User Guide: "How to change your Twitter username," at 2–3 (available at https://help.twitter.com/en/managing-your-account/change-twitter-handle).

**RESPONSE: ADMITS for purposes of summary judgment only.**

27.      Twitter assigns each account a URL based on the account's handle. Ex. 11.

**RESPONSE: ADMITS for purposes of summary judgment only.**

28.      Users may also have a display name that is separate from the username and that is displayed next to the username. Exhibit 12, Screenshot of @PresReed Profile Page (Reed Dep. Ex. 17) (reflecting display name Lewis E. Reed and username @LewisReedSTL); Exhibit 18, Defendant's Twitter Archive Native Production, "account.js" file; *see also* Ex. 57, at 2 (explaining users may have a display name "separate from [the account] username . . . [that is] displayed next to [the] username").

**RESPONSE: ADMITS for purposes of summary judgment only.**

29.      When accessed, a Twitter profile page displays the account's tweets in chronological order. The number of replies, retweets, and likes each tweet has generated are also displayed, but the individual replies, retweets, and "likes" are not displayed in the profile page. Ex. 12.

**RESPONSE: ADMITS for purposes of summary judgment only.**

30.      Replies, retweets, and likes identify the account generating them. Exhibit 13, Twitter User Guide: "About replies and mentions," at 1 (available at https://help.twitter.com/en/using-twitter/mentions-and-replies); Exhibit 14, Twitter User FAQs,

Retweets Section, at 1 (available at https://help.twitter.com/en/using-twitter/retweet-faqs); Exhibit 15, Twitter User Guide: Liking Tweets, at 1 (available at https://help.twitter.com/en/resources/twitter-guide/topics/how-to-get-started-with-twitter/how-to-like-a-tweet-on-twitter-twitter-help).

    **RESPONSE: ADMITS for purposes of summary judgment only.**

31.  "Twitter users are individuals who have created an account on the platform." Ex. 8, ¶ 12.

    **RESPONSE: ADMITS for purposes of summary judgment only.**

32.  "Users can choose to make their page either public or private. A private profile is one in which a user restricts access to their page to only those other users they specifically approve." *Id.* ¶ 12.

    **RESPONSE: ADMITS for purposes of summary judgment only.**

33.  "A public profile is one that can be accessed by any user who has not been 'blocked' by the page's owner." *Id.* ¶ 12.

    **RESPONSE: ADMITS for purposes of summary judgment only.**

34.  Tagging, or mentioning, is a Twitter function that allows a user to include another user's Twitter handle in his or her own tweet so that the mentioned user will receive a notification that the mentioning user is attempting to engage them in dialogue and provide a link to the tagged user's profile. *Id.* ¶ 13.

    **RESPONSE: ADMITS for purposes of summary judgment only.**

35.  Typically, "unless someone has taken an action to prevent it . . . if you tag someone in a tweet, . . . [that] account will get noticed of the fact that it's been tagged." Ex. 3, 102:13–19.

    **RESPONSE: ADMITS for purposes of summary judgment only.**

36.     Retweeting is a Twitter function that allows users to republish the tweet of another user either directly or along with their own commentary on their own page. Ex. 8, ¶ 22.

**RESPONSE: ADMITS for purposes of summary judgment only.**

37.     Embedding is a term of art in the web development community. Exhibit 16, Declaration and Expert Report of David R. Hinkle, ¶ 16.

**RESPONSE: ADMITS.**

38.     When a Twitter account's tweets are embedded in a website, each tweet from that account appears on that website for any users of the website to see. *Id.* ¶ 16.

**RESPONSE: ADMITS.**

39.     Such embedding clearly denotes the messages are tweets and come from Twitter, but the messages appear integrated with the website itself. *Id.* ¶ 16.

**RESPONSE: OBJECTION. This statement is not a "fact" but rather constitutes an interpretation of facts; howsoever a person "interprets" whatever a thing "denotes" is *per se* subjective, and thus cannot be expressed as an objective fact.**

40.     A Twitter account receives a "blue Verified badge" to let "people know that an account of public interest is authentic."   Exhibit 17, Twitter User Guide: "About Verified Accounts," at 2 (available at  https://help.twitter.com/en/managing-your-account/about-twitter-verified-accounts).

**RESPONSE: ADMITS for purposes of summary judgment only.**

41.     To receive the blue badge and be verified an account must be authentic, notable and active. *Id.*

**RESPONSE: ADMITS for purposes of summary judgment only.**

42.     To be verified, users must confirm their identify in one of three ways: (1) "[p]rovide the link to an official website that references you (or your organization) and your

Twitter account;" (2) "[p]rovide a photo of an official government issued identification document, such as your Driver's License or Passport;" or (3) "[p]rovide an official email address with a domain relevant to the notability category you choose." *Id.*

        **RESPONSE: ADMITS for purposes of summary judgment only.**

43.      A user logged into their account who is blocked from President Reed's account cannot see his account, cannot reply to his tweets, cannot participate in comment threads under his account, and will not know if they have been blocked unless they try to visit his account. Exhibit 19, Defendant Lewis Reed's Reponses to First Requests for Admission, Nos. 33–36.

        **RESPONSE: ADMITS for purposes of summary judgment only.**

## CHARACTERISTICS OF PRESIDENT REED'S TWITTER ACCOUNT

44.      President Reed created a Twitter account with the handle @PresReed in March 2009 (the "Account"). Ex. 8, ¶ 16. President Reed has typically used the account to "put out information for people to . . . let them know what I'm up to." Ex. 3, 36:20–37:7. The Account is public. Ex. 8, ¶ 21.

        **RESPONSE: ADMITS.**

45.      Twitter assigned the Account the account identifier 27172787. Ex. 18.

        **RESPONSE: OBJECTION. The material cited to support this statement is not presented in a form that would be admissible in evidence; specifically, the document is unauthenticated and constitutes hearsay. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.**

46.      President Reed had been President of the Board of Aldermen for two years when he created the Account. Ex. 3, 22:8–10.

        **RESPONSE: ADMITS.**

47.     The @PresReed handle was the most frequent handle used for the Account from March 2009 until June 2020. *Id.* at 40:4–11.

**RESPONSE: ADMITS.**

48.     On January 26, 2019, when Sarah Felts was blocked, President Reed "operated and oversaw a Twitter account under the handle @PresReed." Ex. 19, No. 1.

**RESPONSE: ADMITS.**

49.     On June 23, 2020, when the complaint was initially filed, the Account had the handle @PresReed and the Account identified him as the "President of the Board of Aldermen." Ex. 2, No. 9; Ex. 12.

**RESPONSE: ADMITS.**

50.     In November or December 2020, the handle for the Account was changed to @ReedforMayorSTL.  Ex. 2, No. 9.

**RESPONSE: ADMITS.**

51.     In April 2021, the handle for the Account was changed to @LewisReedSTL, under which it currently operates. *Id.*

**RESPONSE: ADMITS.**

52.     In December 2020, after President Reed had stopped using the handle @PresReed an individual created a new account with that handle. Ex. 3, 132:25–133:24.

**RESPONSE: ADMITS.**

53.     President Reed uses Twitter to "interact with and engage with his constituents regarding important official policies." Ex. 19, No. 32.

**RESPONSE: ADMITS.**

54.     President Reed has interacted with Twitter users by replying to comments to the Account's tweets. Ex. 8, ¶ 23.

**RESPONSE: ADMITS.**

55.    President Reed and the employees of the Office of the President of the Board of Aldermen are not subject to the City of St. Louis' social media policies issued by the director of personnel. Ex. 3, 22:22–25; Ex. 4, 93:23–94:17.

**RESPONSE: OBJECTION. The material cited in support of this statement of fact does not fully support it; both exhibits evidence nothing more than lack of knowledge as to whether the social media policies apply; Defendant further objects on the ground that this is a legal conclusion, not a statement of fact, which neither witness can testify to, and which the Defendant cannot admit or deny as a fact.**

56.    President Reed has sole authority to authorize communication on behalf of the Office of President of the Board of Aldermen for the City of St. Louis. Ex. 3, 26:24–27:3.

**RESPONSE: OBJECTION. The cited material does not support this statement. In the cited material, Lewis Reed testified that he makes the decisions about who is authorized to communicate on behalf of the office, meaning he has the final or ultimate authority to authorize communications, but is not the "sole" authority for authorizing communications.**

57.    President Reed does not answer to anyone within the structure of the government of the City of St. Louis. *Id.* at 22:19–21.

**RESPONSE: OBJECTION. This is not a statement of fact, but rather a legal conclusion; furthermore, the meaning of "answer to" as used in this statement is vague and ambiguous. Accordingly, this statement cannot be admitted or denied, and Defendant Reed moves to strike this statement. *See, e.g.*, *L&B Servs., LLC v. Star Constr., LLC*, No. 6:17-cv-03175-MDH, 2018 U.S. Dist. LEXIS 114142, at \*7 (W.D. Mo. July 10, 2018); *Advance Brands,***

*LLC v. Alkar-Rapidpak, Inc.*, No. 08-CV-4057-LRR, 2011 U.S. Dist. LEXIS 50200, at *6 (N.D. Iowa May 10, 2011).

58.      The bio section of the Account has not listed any restrictions on likes, retweets, quotes of or replies to the Account's tweets, mentions of the Account, or the use of any other interactive feature that involves the Account. Ex. 12.

**RESPONSE: ADMITS.**

59.      President Reed is the one who made any decision to block any users, including Ms. Felts, from the Account. Ex. 2, Nos. 6–7.

**RESPONSE: ADMITS.**

60.      Any member of the public can view President Reed's posts, and any Twitter user who is not blocked can like, reply, or "retweet" President Reed's posts. Ex. 8, ¶ 22.

**RESPONSE: ADMITS.**

61.      Any user who has not been blocked by President Reed may "like," "quote," or participate in the comment section of President Reed's posts. *Id.* ¶ 22.

**RESPONSE: ADMITS.**

**PRESIDENT REED'S USE OF THE ACCOUNT**

62.      The login credentials for the Account, including its username and password, have been possessed by at least two members of President Reed's staff. Ex. 2, No. 3.

**RESPONSE: ADMITS.**

63.      Thomas Shepard, the Special Assistant to the President in President Reed's office, has had access to the Account since at least January 2016. Ex. 4, 24:2–6. Mr. Shepard was a city employee at all times when he had access to the Account. *Id.* at 30:19–31:1.

11

**RESPONSE: ADMITS. By way of further answer, Mr. Shephard was also a volunteer for Mr. Reed's campaigns.** *See* **Defendant's Statement of Additional Material Facts, ¶ 1,** *infra.*

64.     At various times, President Reed requested Mr. Shepard's advice on what to post on Twitter. *Id.* at 44:7–23.

**RESPONSE: ADMITS.**

65.     On occasion, President Reed requested that Mr. Shepard review tweets before they were posted. *Id.* 44:24–45:1.

**RESPONSE: ADMITS.**

66.     Ms. Goodman has the log in credentials to the Account. Ex. 5, 23:18–23.

**RESPONSE: ADMITS.**

67.     Ms. Goodman has posted tweets from the Account at the direction of President Reed. *Id.* at 23:21–24:9.

**RESPONSE: ADMITS.**

68.     President Reed has asked Ms. Goodman to review tweets before he posted them. *Id*. at 17:19–21.

**RESPONSE: ADMITS.**

69.     Ms. Goodman has made suggestions about what President Reed should post on the Account. *Id.* at 18:10–12.

**RESPONSE: ADMITS.**

70.     Members of President Reed's staff created graphics that President Reed posted to Twitter. Ex. 3, 72:23–73:19, 74:19–75:3, 84:5–14; *see also id.* at 87:22–88:9 (President Reed explaining that if his staff understood he was working to get a message out they would create a graphic to go with the message).

**RESPONSE: ADMITS.**

71.      On April 18, 2019, Ms. Goodman (who formerly went by Mary Ries) sent an email from her city-provided account to city employees Sonja Pelli and Zachary Kraft, who worked in the IT department, requesting the IT department set up a webpage for the Board of Aldermen President's Office that included a feed of the Account. Ex. 5, 6:12–14; *id.* 45:2–46:15; Exhibit 20, April 18, 2019 Email re "Web Update Request" (Goodman Dep. Ex. 5).

**RESPONSE: ADMITS.**

72.      President Reed stated that if he were doing something for a campaign purpose, he would avoid using city resources to do it. Exhibit 32, Transcript of Deposition of Lewis Reed, August 30, 2021, Volume III, 9:3–10.

**RESPONSE: ADMITS that when Defendant was asked by Plaintiff's counsel whether he would "avoid" using City resources to do something for campaign purposes, Defendant replied "absolutely, yes."**

73.      President Reed was copied on the email that Ms. Goodman sent to Ms. Pelli and Mr. Kraft. Ex. 20.

**RESPONSE: ADMITS.**

74.      In sending that email, Ms. Goodman understood that she was asking for President Reed's Twitter feed to be embedded in the webpage. Ex. 5, 48:5–9.

**RESPONSE: ADMITS.**

75.      Ms. Goodman requested embedding the Twitter feed so that President Reed's page would be similar to those of other elected officials. *Id.* at 48:10–14.

**RESPONSE: ADMITS.**

76.      Sonja Pelli works as the Manager of Internet Services for the City of St. Louis. Exhibit 21, Transcript of Deposition of Sonja Pelli, 11:6–12.

**RESPONSE: ADMITS.**

77.     Ms. Pelli is responsible for the web infrastructure that hosts the City of St. Louis'

website and for coordination with departments and agencies and some elected officials regarding

content on that website. *Id.* at 11:20–12:1.

**RESPONSE: ADMITS as far as possible based upon the materials provided;**

**however, page 12 of the deposition was not included with Exhibit 21.**

78.     The webpage for the Office of the President of the Board of Aldermen is a part of

the City of St. Louis Website. *Id.* at 34:16–19.

**RESPONSE: ADMITS.**

79.     The address for the main City of St. Louis Website is www.stlouis-mo.gov. *Id.* at

28:5–7.

**RESPONSE: ADMITS.**

80.     Ms. Pelli assisted in the creation of the webpage for the Office of the President of

the Board of Aldermen. *Id.* at 35:2–6, 39:24–40:4.

**RESPONSE: ADMITS.**

81.     The Office of the President of the Board of Aldermen is responsible for the content

on the webpage dedicated to that office. *Id.* at 35:22–24; 54:9–25.

**RESPONSE: ADMITS.**

82.     The assistance of a member of the IT staff for the City of St. Louis would have been

required to add an embedded Twitter feed to the webpage for the Office of the President of the

Board of Aldermen. *Id.* at 45:4–48:15.

**RESPONSE: ADMITS.**

83.     The Account was embedded in the webpage for the Office of the President of the

Board of Aldermen that was created after Ms. Goodman's request. *Id.* at 44:11–16.

**RESPONSE: ADMITS.**

84.     An embedded feed of the Account continued to appear on that webpage on June 12, 2020. Ex. 16, ¶¶ 15–17.

**RESPONSE: OBJECTION; the material cited does not support the propositions contained in this statement. Specifically, the cited materials claim the page was "created on May 10, 2019," which is not factually correct nor is it adequately supported, but rather constitutes hearsay; the "expert" further claims that he "was able to detect the embedding code" as of a certain date, but this does not establish that an "embedded feed of the Account continued to appear" as of that date.**

85.     On December 28, 2020, President Reed admitted that the webpage for the Office of the President of the Board of Aldermen includes a live feed of his posts. Ex. 8, ¶ 18.

**RESPONSE: ADMITS.**

86.     As least as late as December 28, 2020, the webpage for the Office of the President of the Board of Aldermen provided a direct link to the Account. *Id.*

**RESPONSE: ADMITS.**

87.     President Reed's profile on the City of St. Louis' website links to the Twitter page currently associated with the @PresReed handle. Exhibit 22, President Lewis Reed's Profile on the City of St. Louis' Website, at 3 (available at https://www.stlouis-mo.gov/government/departments/aldermen/profiles/profile-president-lewis-reed.cfm); Exhibit 10, Declaration of Andrew R. Stubbs, ¶¶ 3–4.

**RESPONSE: ADMITS.**

88.     The Account has not used the handle @PresReed since approximately December 2020. Ex. 2, No. 9.

**RESPONSE: ADMITS.**

89.     The account currently using the handle @PresReed is not the same account that President Reed used to block Ms. Felts on January 26, 2019. Ex. 3, 132:25–133:24.

**RESPONSE: ADMITS.**

90.     At least as late as December 28, 2020, the Account included a link that directed visitors to the webpage for the Office of the President of the Board of Aldermen, which provides access to President Reed's government email, phone number, and office address. Ex. 8, ¶ 18.

**RESPONSE: ADMITS.**

91.     On January 15, 2019, President Reed posted a tweet that included a letter he had sent in his capacity as President of the Board of Aldermen to Rick Ernst, the Commissioner of the Board of Public Service, asking the "Facilities Management to remove any shredding equipment from the premises of [the St. Louis Agency on Training & Employment]." Ex. 3, 91:2–14; Exhibit 23, January 15, 2019 President Reed Tweet Posting Letter to Commissioner of the Board of Public Service (Reed Dep. Ex. 26).

**RESPONSE: ADMITS to all material parts (Rick Ernst is the Commissioner of the Facilities Management Division; however, there is no "commissioner" of the Board of Public Service.** *See* [https://www.stlouis-mo.gov/government/departments/public-service/board.cfm](https://www.stlouis-mo.gov/government/departments/public-service/board.cfm)**. The Facilities Management Division is a constituent of the City that falls under the purview of the Board of Public Service. This detail is not materially relevant, and is not being used to dispute this statement, but rather is being offered for accuracy only).**

92.     On March 21, 2020, President Reed posted a tweet that included the image of a letter that he had sent to the Board of Aldermen written in response to issues the City of St. Louis was facing in regard to the COVID-19 pandemic. Ex. 3, 63:14–64:25; Exhibit 30, March  21, 2020 President Reed Tweet Posting Letter to Board of Aldermen re COVID Response (Reed Dep. Ex.

20); Exhibit 31, March 21, 2020 Letter from President Reed to Board of Aldermen re COVID Response (Reed Dep. Ex. 21).

**RESPONSE: ADMITS.**

93.     The letter attached to the March 21, 2020, tweet was written on letterhead that indicated it was from the Office of the President of the Board of Aldermen. Ex. 3, 65:1–7; Ex. 31.

**RESPONSE: ADMITS.**

94.     The letter attached to the March 21, 2020 tweet recommended that members of the Board of Aldermen use their Twitter accounts to "communicate with your constituents." Ex. 31; Ex. 3, 69:5–22.

**RESPONSE: ADMITS.**

95.     On June 3, 2020, President Reed used Twitter to announce a Coronavirus special committee he had created in his role as president of the Board of Aldermen. Ex. 3, 70:22–71:3, 73:25–74:3; Exhibit 24, June 3, 2020 President Reed Tweet Announcing Coronavirus Task Force (Reed Dep. Ex. 22) (tweeting "I'm proud to announce the organization of the Coronavirus Special Committee of the #STLBOA."). The tweet contained a graphic containing a City of St. Louis logo and the words "Update" and "COVID Special Committee."  Ex. 24.  This graphic was created by an employee in the Office of the President of the Board of Aldermen.  Ex. 3, 72:23–73:19.  The tweet also contains a link to a City of St. Louis government web page.  *Id.* at 73:20–24.

**RESPONSE: ADMITS the first two sentences of this statement, and the last statement of this statement; OBJECTS to the sentence that reads the "graphic was created by an employee in the Office of the President of the Board of Aldermen" in that the cited material does not support this proposition. The cited material evidences the fact that Lewis Reed takes responsibility for the graphic, and that an "employee" created it, but it does not specify that an employee of the Office of the President created it; by way of further answer,**

17

employees of the Office of the Board President also volunteered for his campaigns. *See* Defendant's Statement of Additional Material Facts, ¶ 1, *infra.*

96.     On June 8, 2020, President Reed posted a tweet detailing legislation that he had filed that day regarding certain use of force policies. Ex. 3, 74:7–18; Exhibit 55, June 8, 2020 President Reed Tweet re Board Bill 63 (Reed Dep. Ex. 23). The tweet included a graphic that was created by an employee in Reed's office.  Ex. 3, 74:19–75:3.

        **RESPONSE: ADMITS the first sentence; OBJECTS to the second sentence in that the material cited does not support the statement of the second sentence. In the material cited, Lewis Reed testified that he was "assuming" that it was employees of the Office of the President of the Board of Aldermen who created the graphic; by way of further answer, employees of the Office of the Board President also volunteered for his campaigns.** *See* **Defendant's Statement of Additional Material Facts, ¶ 1,** *infra***.**

97.     On November 10, 2020, President Reed posted a tweet that tagged the Twitter account of Missouri Governor Mike Parson in an attempt to ensure that the Governor had seen the news story mentioned in the tweet and to "encourage them to send some of that money to the City of St. Louis." Ex. 3, 101:9–102:11; Exhibit 25, November 10, 2020 President Reed Tweet Tagging Governor Mike Parson (Reed Dep. Ex. 29).

        **RESPONSE: ADMITS.**

98.     President Reed stated that this tweet was an example of him using Twitter with another elected official relating to governance of the City of St. Louis. Ex. 3, 103:19–22.

        **RESPONSE: ADMITS.**

99.     On May 7, 2021, President Reed used Twitter to announce his intention to introduce a bill regarding the city's annual budget that morning. *Id.* at 79:3–6.

        **RESPONSE: ADMITS.**

100.      As a part of the thread attached to the May 7, 2021 tweet, President Reed also posted a tweet that encouraged members of the public to be a part of the hearing process of the bill. *Id.* at 80:1–19; Exhibit 26, May 7, 2021 President Reed Tweet Thread Encouraging Public Participation in Budget Bill Process (Reed Dep. Ex. 24).

               **RESPONSE: ADMITS.**

101.      On June 30, 2021, President Reed posted a tweet inviting members of the public to participate in a Board of Aldermen meeting to voice their opinions about how they believed funds from the American Recovery Act should be spent by the city, tweeting "[i]f you own a city business or nonprofit or support a city business or nonprofit, we want to hear from you." Ex. 3, 83:20–25; Exhibit 27, June 30, 2021 President Reed Tweet Soliciting Public Input re Expenditure of American Recovery Act Funds (Reed Dep. Ex. 25).

               **RESPONSE: ADMITS.**

102.      The June 30, 2021 tweet also included a link to the City of St. Louis website and a graphic created by a staff member of President Reed's office. Ex. 3, 84:1–14.

               **RESPONSE: ADMITS that the tweet contained a link, and a graphic created by a person other than Lewis Reed; OBJECTS in that the material cited does not support the statement that it was "created by a staff member of President Reed's office." The cited material states that Reed was "assuming" that a staff member made it, but it is not established that it is a staff member of the Office of the President, and not his campaign; by way of further answer, employees of the Office of the Board President also volunteered for his campaigns. *See* Defendant's Statement of Additional Material Facts, ¶ 1, *infra*.**

103.      On July 16, 2021, President Reed posted a tweet that he stated was "a press advisory that I put out to let people know that it's important that we get the Board of E&A back in session

to move the COVID-19 relief funding." *Id.* at 99:21–24; Exhibit 28, July 16, 2021 President Reed

Tweet re Press Advisory (Reed Dep. Ex. 28).

> **RESPONSE: ADMITS.**

104.     On July 30, 2021, President Reed posted a tweet about a legal opinion that he

received, addressed to "the honorable Lewis E. Reed, President, City of St. Louis, Board of

Aldermen." Ex. 3, 94:21–95:4; Exhibit 29, July 30, 2021 President Reed Tweet Posting Legal

Opinion (Reed Dep. Ex. 27).   The legal opinion related to a Board of Aldermen bill.   Ex. 29

("Today, myself alongside members of #STLBOA shared a legal opinion stating that if Board Bill

2 is enacted in its current state it would NOT violate the federal treasury guielines.").

> **RESPONSE: ADMITS; by way of further answer, this legal opinion was**
> **solicited and paid for by Lewis Reed's campaign, and not by himself in his capacity as the**
> **President of the Board of Aldermen.** *See* **Defendant's Statement of Additional Material Facts,**
> **¶ 26,** *infra.*

105.     Included in that tweet was a link to the City of St. Louis' YouTube channel where

an individual could watch a related press conference. Ex. 3, 97:20–99:6.

> **RESPONSE: ADMITS.**

106.     On April 13, 2021, President Reed posted a message on Twitter that stated: "Today,

my office along with @LydaKrewson @STLFireDept @WomensVoicesSTL announced a new

partnership with "Lock it for Love" to provide free gun locks to anyone who needs one at all 30

fair stations - NO QUESTIONS ASKED!" Exhibit 33, April 13, 2021 President Reed Tweet

Announcing Gun Safety Initiative (Reed Dep. Ex. 43); Ex. 32, 9:23–10:5.

> **RESPONSE: ADMITS.**

107.     President Reed was referring to the Office of the President of the Board of

Aldermen in the April 13, 2021 tweet. Ex. 32, 10:6–9.

**RESPONSE: ADMITS.**

108.     On August 16, 2021, President Reed used his Twitter account to post an image of a press release from the Office of the President of the Board of Aldermen. *Id.* at 10:10–11:9. Exhibit 34, August 16, 2021 President Reed Tweet re COVID Relief Funds (Reed Dep. Ex. 44).

**RESPONSE: ADMITS.**

109.     The press release in the August 16, 2021 tweet included the seal of the Board of Aldermen for the City of St. Louis and the language at the top of the document indicated that it was from the Office of the President of the Board of Aldermen. *Id.* at 11:18–12:6.

**RESPONSE: ADMITS.**

**MS. FELTS' USE OF TWITTER**

110.     Ms. Felts has operated her personal Twitter account under the handle @SarahFelts since 2009. Ex. 1, 8:2–8.

**RESPONSE: ADMITS.**

111.     Ms. Felts used Twitter to keep up with local government issues. *Id.* at 8:24–9:17.

**RESPONSE: ADMITS.**

112.     Ms. Felts is an engaged constituent of President Reed. *Id.* at 11:15–25, 14:18–25.

**RESPONSE: ADMITS.**

113.     Ms. Felts uses Twitter to keep up with matters of public concern. *Id.* at 9:8–10:1.

**RESPONSE: ADMITS.**

114.     Ms. Felts has previously tweeted at President Reed concerning "policy issues" or "matters . . . coming before the board of aldermen." *Id.* at 12:1–5; Exhibit 35, April 21, 2018 Sarah Felts Tweet re President Reed Policy Position on Board of Aldermen Reduction.

**RESPONSE: ADMITS.**

**PRESIDENT REED'S BLOCK OF MS. FELTS**

115.     On January 26, 2019, at 4:47 p.m., Ms. Felts responded to a tweet by Action St. Louis, "a grassroots racial justice" organization. Ex. 1, 17:1–5; Exhibit 37, January 26, 2019 Sarah Felts Tweet re President Reed's Comments on Closing The Workhouse.

**RESPONSE: ADMITS.**

116.     She tagged the Account in her response, Ex. 37, and asked President Reed to clarify a statement he made earlier regarding efforts to close the St. Louis Workhouse, a "Medium Security Institution . . . [and] one of the two jails in St. Louis," Ex. 1, 17:8–11.

**RESPONSE: ADMITS that the cited material includes the quotes explaining what the "Workhouse" is, but otherwise Plaintiff OBJECTS that the material cited in support of this statement of fact otherwise do not support the remainder of this statement.**

117.     President Reed admitted the closing of the Workhouse is a "contentious issue." Ex. 8, ¶ 26.

**RESPONSE: ADMITS.**

118.     Ms. Felts' tweet read: "What do you mean by 'change the messaging around #CloseTheWorkhouse,' @PresReed? #STLBOA #aldergeddon2019 #WokeVoterSTL." Ex. 37.

**RESPONSE: ADMITS.**

119.     By approximately 7:13 p.m. on January 26, 2019, less than three hours later, Ms. Felts discovered she was unable to view the Account because President Reed had blocked her. Ex. 1, 14:4–25; Exhibit 38, January 26, 2019 Sarah Felts Tweet re Being Blocked by Lewis Reed.

**RESPONSE: ADMITS.**

120.     Ms. Felts was " . . . frustrated that [President Reed] had blocked [her] because . . . [she] was asking a question in good faith about . . . a policy issue." Ex. 1, 15:5–7.

**RESPONSE: ADMITS.**

121.      At 7:13 p.m. on January 26, 2019, Ms. Felts tweeted: "Why have you blocked me, @PresReed? I'm a constituent & this is your public account. #STLBOA #Aldergeddon2019 #WokeVoterSTL." Ex. 38.

**RESPONSE: ADMITS.**

122.      Since she was blocked from accessing President Reed's account, "[Ms.] Felts would be unable to effectively respond to and engage in the City of St. Louis's messaging over Pres. Reed's Twitter account. . . . [Ms.] Felts would have been prohibited from participating in the conversation around these tweets while she was blocked." Ex. 16, ¶ 14.

**RESPONSE: OBJECTION; DENIES; The material cited does not support the proposition of this statement that "Ms. Felts" would be unable to interact with Lewis Reed's account. Ms. Felts was free to interact under a different account. Only the precise account blocked would have prevented her from viewing or otherwise interacting with Lewis Reed's account.**

123.      Specifically, the effect of the block from the @PresReed account "[p]revented Sarah Felts from viewing tweets by @PresReed[,] [p]revented [Ms.] Felts from sending direct messages to @PresReed[,] [p]revented [Ms.] Felts from responding publicly to otherwise public tweets from @PresReed[,] [and p]revented [her] . . . from finding tweets by @PresReed in searches, etc." *Id.* ¶ 13.

**RESPONSE: ADMITS.**

124.      Ms. Felts wishes to use her Twitter account to view, like, reply or retweet President Reed's tweets, as well as like, quote, or reply to tweets in the comments section of President Reed's account. Exhibit 39, Plaintiff's Complaint, ¶¶ 2, 4, 5, 20, 25.

**RESPONSE: OBJECTION. Plaintiff cites to her own unverified Complaint, which is insufficient to support this statement as it is not competent, admissible evidence. By**

way of further answer, Plaintiff can in fact "view, like, reply or retweet" Lewis Reed's tweets in that she is not currently blocked from his Twitter page. *See*, **Defendant's Statement of Additional Material Facts, ¶ _____, *infra*.**

125.     Ms. Felts' account remained blocked by the Account on June 23, 2020, the date the Complaint in this matter was filed. Exhibit 36, Declaration of Sarah Felts, ¶ 4. Ms. Felts learned that her Twitter account under the handle @sarahfelts was "unblocked by [the Account] no later than February 8, 2021." *Id.* ¶ 5.

**RESPONSE: ADMITS.**

**PRESIDENT REED'S PROFFERED EXPLANATION FOR BLOCKING MS. FELTS**

126.     On June 7, 2021, over two years after he blocked Ms. Felts, President Reed stated that he could not admit or deny whether he blocked Ms. Felts in response to her tweet asking about the Workhouse because he did "not remember this tweet from @sarahfelts." Ex. 19, No. 28; Ex. 37.

**RESPONSE: ADMITS.**

127.     He only admitted that "an individual with login credentials to Mr. Reed's Twitter account blocked the Twitter account operating under the handle @sarahfelts in response to" the aforementioned Tweet. Ex. 19, No. 30.

**RESPONSE: DENIES. Plaintiff's Exhibit 19 demonstrates that Defendant did not admit "only" this statement of fact; Plaintiff's Exhibit 19 alone demonstrates that Lewis Reed admitted to numerous other facts; *see also* Plaintiff's Exhibits 1, 2, 3, 8, 32, and 45.**

128.     Two months later, on August 13, 2021, President Reed stated he blocked Ms. Felts due to her use of the hashtag "Aldergeddon2019." Ex. 3, 107:14–108:16.

**RESPONSE: ADMITS.**

129.     Ms. Felts stated that Aldergeddon referred to a 2019 race where "there were . . .
seats up for election on the board of aldermen and a lot of candidates. . . . I don't know who started
that hashtag but that was a way that local St. Louisans we[re]  talking about the upcoming election.
So that was just another way to aggregate content about . . . this particular topic." Ex. 1, 18:8–15.

        **RESPONSE: ADMITS.**

130.     A May 5, 2019 article in the St. Louis American explained "[t]he number and zest
of the primary challenges earned the 2019 municipal primary [for certain seats on the Board of
Aldermen] the nickname 'aldergeddon.'" Exhibit 40, May 5, 2019 St. Louis American Article
Titled "Incumbents Win in President and Aldermanic Races" (Reed Dep. Ex. 33).

        **RESPONSE: ADMITS for purposes of summary judgment only; Defendant
OBJECTS that the material cited to support this statement of fact cannot be presented in a
form that would be admissible in evidence. Specifically, the document lacks foundation in
that it is not authenticated, and constitutes hearsay.**

131.     On November 26, 2018, a Twitter account with the handle "@shuneu" and display
name "Shula Neuman" posted a tweet discussing what to call the race for the President of the
Board of Aldermen. Exhibit 41, November 26, 2018 Shula Neuman Tweet (Reed Dep. Ex. 32)
(available at https://twitter.com/GConnolly314/status/1067231122864709633).

        **RESPONSE: ADMITS for purposes of summary judgment only; Defendant
OBJECTS that the material cited to support this statement of fact cannot be presented in a
form that would be admissible in evidence. Specifically, the document lacks foundation in
that it is not authenticated, and constitutes hearsay.**

132.     One account, @GConnolly314, suggested #Aldergeddon2019, and a verified
account, @rlippmann, belonging to Rachel Lippmann, agreed that "Aldergeddon is a strong
contender." *Id*.

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.**

133.     A blue check badge appears next to the @shuneu handle indicating it has been "verified" by Twitter.  *Id.*; *see supra* ¶ 42.

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.**

134.     The @shuneu account belongs to Shula Neuman who is described on her verified account as "Executive editor for St. Louis Public Radio." Exhibit 42, Shula Neuman Twitter Profile Page (available at https://twitter.com/shuneu).

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.**

135.     Rachel Lippmann is a reporter for "St. Louis public radio." Ex. 32, 24:17–19.

**RESPONSE: ADMITS.**

136.     A profile page for Rachel Lippmann on St. Louis Public Radio's website includes a link to the @rlippmann account and states that "Rachel's on Twitter @rlippmann." Exhibit 43, NPR Webpage, Rachel Lippmann Bio (available at https://news.stlpublicradio.org/people/rachel-lippmann).

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.**

137.    On January 17, 2019, a verified account with the handle @sarahfenske and display name Sarah Fenske tweeted: "Didn't see this coming (and neither did the bill's sponsor, apparently): St. Louis aldermanic committee kills plan to require public vote on airport privatization #Aldergeddon2019." Exhibit 44, January 17, 2019 Sarah Fenske Tweet (Reed Dep. Ex. 37) (available at https://twitter.com/sarahfenske/status/1086038673982935041); Exhibit 45, Transcript of Deposition of Lewis Reed, Volume II, August 20, 2021, 26:20–25.

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay. Lewis Reed cannot authenticate the tweets of third persons.**

138.    The description on the verified @sarahfenske account describes Sarah Fenske as "Host, @STLonAir." Exhibit 46, Sarah Fenske Twitter Profile Page (available at https://twitter.com/sarahfenske).

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.**

139.    A profile page for Sarah Fenske on St. Louis Public Radio's website includes a link to the @sarahfenske account and describes Ms. Fenske as the host of St. Louis on the Air. Exhibit

47, NPR Webpage, Sarah Fenske Bio (available at https://news.stlpublicradio.org/people/sarah-fenske).

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.**

140.    Sarah Fenske is a reporter and the host of St. Louis On the Air. Ex. 45, 24:24–25:18.

**RESPONSE: ADMITS.**

141.    On March 5, 2019, a verified account with the handle @alexiszotos and display name Alexis Zotos tweeted a message about the latest results for the Board of the Aldermen race with the hashtag Aldergeddon when the "city website [was] down." Exhibit 48, March 5, 2019 Alexis Zotos Tweet (Reed Dep. Ex. 41) (available at https://twitter.com/alexiszotos/status/1103141173923926016); Ex. 45, 43:1–12.

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.**

142.    The verified @alexiszotos account describes Ms. Zotos as an "Emmy-award winning reporter at @KMOV." Exhibit 49, Alexis Zotos Twitter Profile Page (available at https://twitter.com/alexiszotos).

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a**

form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.

143.     President Reed agreed the Alexis Zotos account that tweeted the message belonged to a reporter for KMOV. Ex. 45, 41:15–42:20.

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay. Lewis Reed cannot authenticate the writings of third persons.**

144.     On December 1, 2018, a verified account with the handle @tishaura and the display name Tishaura O. Jones, tweeted: "What do you do when two of your friends run against each other in a major local election? #AskingForAFriend #Aldergeddon2019." Exhibit 50, December 1, 2018 Tishaura O. Jones Tweet (Reed Dep. Ex. 35) (available at https://twitter.com/tishaura/status/1068907818915368960).

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay. Lewis Reed cannot authenticate the writings of third persons.**

145.     President Reed stated Ms. Jones is currently "the mayor of the City of St. Louis." Ex. 45, 11:24–25.

**RESPONSE: ADMITS.**

146.     President Reed knows Ms. Jones personally, is familiar with Ms. Jones' Twitter feed, and recognized the December 1, 2018 tweet as a tweet from Ms. Jones. *Id.* at 11:21–12:16; 12:25–13:11.

**RESPONSE: ADMITS that Defendant knows Ms. Jones personally and is familiar with her Twitter feed; otherwise, Defendant OBJECTS that Plaintiff cannot authenticate this particular Tweet as in fact coming from Tishaura Jones through the testimony of Defendant; Defendant does not have personal knowledge of what Tishaura Jones has or has not tweeted; accordingly the material cited cannot support the statement that "the December 1, 2018 tweet" was in fact a "tweet from Ms. Jones."**

147.     On March 5, 2019, a verified account with the handle @tonymess and display name Tony Messenger tweeted "Theme of my next column: #serviceunavailable #STL #Aldergeddon2019," above what appears to be an error message associated with the St. Louis Government website. Exhibit 51, March 5, 2019 Tony Messenger Tweet (Reed Dep. Ex. 42) (available at https://twitter.com/tonymess/status/1103131440642961408); Ex. 45, 48:16–49:10.

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.**

148.     The verified @tonymess account describes Mr. Messenger as "Metro columnist for the St. Louis Post-Dispatch." Exhibit 52, Tony Messenger Twitter Profile Page (available at https://twitter.com/tonymess).

**RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a**

form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.

149.     President Reed agreed that "Mr. Messenger is a columnist for the Post-Dispatch," Ex. 45, 45:1–3, stated he had met Mr. Messenger in person twice, *id.* at 45:11–12, and agreed that the above tweet was "a [t]weet from [the] Tony Messenger who we've been discussing," *id.* at 48:4–8.

RESPONSE: ADMITS that Defendant knows Mr. Messenger personally and is familiar with her Twitter feed; otherwise, Defendant OBJECTS that Plaintiff cannot authenticate this particular Tweet as in fact coming from Tony Messenger through the testimony of Defendant; Defendant does not have personal knowledge of what Tony Messenger has or has not tweeted; accordingly the material cited cannot support the statement that the tweet was in fact from Mr. Messenger.

150.     President Reed has also interacted with Mr. Messenger on Twitter. *Id.* at 46:9–25.

RESPONSE: ADMITS.

151.     On January 5, 2019, an account with the display name Anne Schweitzer and handle @Schweitzer88 tweeted: "Six adults, one kid, and a dog, all here to get those votes for @chryssi! 6th Ward: Open up your doors for this dream team! #Aldergeddon2019," [emojis omitted]. Exhibit 53, January 5, 2019 Anne Schweitzer Tweet (Reed Dep. Ex. 36) (available at https://twitter.com/Schweitzer88/status/1081634299466694661); *Id.* at 20:14–21:8.

RESPONSE: ADMITS for purposes of summary judgment only; Defendant OBJECTS that the material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, the document lacks foundation in that it is not authenticated, and constitutes hearsay.

152.     President Reed testified that Anne Schweitzer is a member of the Board of Alderman. Ex. 45, 19:9–25.

**RESPONSE: ADMITS.**

153.     President Reed testified that he interpreted Aldergeddon to "refer to war and destruction on the Board of Aldermen." Ex. 3, 108:17–20.

**RESPONSE: ADMITS.**

154.     President Reed said the Aldergeddon hashtag could radicalize people. *Id.* at 107:24–108:2.

**RESPONSE: ADMITS.**

155.     President Reed never asked anyone else what Aldergeddon meant, nor had he heard or read of anyone but Sarah Felts using this term prior to Ms. Felts' January 26, 2019 tweet. *Id.* at 109:7–13; 110:11–25.

**RESPONSE: ADMITS.**

156.     President Reed said he could not speculate as to why Ms. Felts used the term Aldergeddon because he did not know her well enough and had no idea what her intentions were in using the term. Ex. 45, 9:1–10, 11:2–20.

**RESPONSE: ADMITS.**

157.     President Reed said "[i]t doesn't matter that three or four people on Twitter used [Aldergeddon] in a different way," Ex. 3, 115:17–19, or "how . . . they mean this phrase," because he still takes "offense" to the term, *id.* at 119:18–25.

**RESPONSE: ADMITS.**

158.     When asked if he believed, "sitting here today that it is possible that Ms. Felts was using the tag Aldergeddon to call for physical violence against the board of aldermen," Reed replied, "I don't know [Ms. Felts] well enough to speculate on who she is and what she does and

what her past has been and the kinds of things she gets involved in. So I can't really speculate on what her actions are. What I can say is that the word itself is a word that has its roots in violent, very, very violent and destructive acts. . . . I take that very seriously . . . which is why . . . when I saw it, I blocked her." Ex. 45, 10:1–11:1.

**RESPONSE: ADMITS.**

159.    President Reed testified that he blocked an account with the handle @Lindsay_Pattan "because she was saying outrageous stuff during the campaign," referring to an election campaign for the office of the President of the Board of Aldermen for the City of St. Louis. Ex. 3, 129:11–22.

**RESPONSE: ADMITS.**

160.    President Reed testified that he blocked an account with the handle @J_Nelson2021 "because he was [a political opponent's] campaign manager" who was "not engaged in city business" and "not trying to find out about Board of Aldermen issues." *Id.* at 126:5–127:2.

**RESPONSE: ADMITS.**

161.    President Reed agreed an account with display name Rachel Lippmann and handle @rlippmann tweeted on March 5, 2019: "Polls have closed in #Aldergeddon2019. You can vote if you're in line. I'm at @PresReed HQ tonight. @jrosenbaum heads to @SenatorNasheed. And @iamcdabvis, when he's done at County Council, will head to @MeganEllyia. . . ." Exhibit 54, March 5, 2019 Rachel Lippmann Tweet (Reed Dep. Ex. 47) (available at https://twitter.com/rlippmann/status/1103098326981984256); Ex. 32, 25:4–13.

**RESPONSE: ADMITS.**

162.    President Reed agreed that the exhibit he was shown "a Tweet from Rachel Lippmann." Ex. 32, 24:9–14.

**RESPONSE: OBJECTION. The material cited to support this statement of fact cannot be presented in a form that would be admissible in evidence. Specifically, Plaintiff attempts to authenticate a Tweet from a third person via Lewis Reed's familiarity with a name of a local media personality, but this does not authenticate the Tweet itself because Lewis Reed does not have knowledge regarding the Tweet's creation and publication.**

163.     President Reed testified Rachel Lippmann "works for St. Louis public radio," *id.* at 24:17–19, and that he was "sure" he followed her on Twitter, *id.* at 24:22–25.

**RESPONSE: ADMITS.**

164.     President Reed agreed Ms. Lippmann tagged him in this tweet and that he normally gets a notification when someone tags him. *Id.* at 26:4–22.

**RESPONSE: ADMITS.**

165.     President Reed agreed that tagging would get a tweet to "show up on our feed or know that someone tagged us," *id.* at 26:8–12, and that he would get a notification when someone tags him, *id.* at 26:15.

**RESPONSE: ADMITS.**

166.     President Reed said that though he had not seen the Tweet before, it "absolutely" concerned him due to the use of Aldergeddon. *Id.* at 27:3–5.

**RESPONSE: ADMITS.**

167.     When asked if he planned "on taking any action regarding Ms. Lippmann's access to [his] Twitter Account," President Reed said he "missed this" and would "probably not [take action] because its two years ago. I look it up – I'll probably look it up and see what I can do about it, see if I can delete it or whatever. It's two years ago." *Id.* at 34:4–21.

**RESPONSE: ADMITS.**

## **DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

1.       Tom Shephard, Mary Goodman, and other employees of the Office of the President of the Board of Aldermen volunteer for Lewis Reed's campaigns for office. [Ex. A, Deposition of Lewis Reed, 8/13/21, 43:23 – 45:2; 46:7 – 47:3; 48:6-17; 49:9 – 50:3; 51:11-15].

2.       The embedding of Lewis Reed's Twitter feed into the page of the President of the Board's on the City's website was not done at the behest of Lewis Reed. [Ex. B, Deposition of Lewis Reed, 8/30/21, 20:13 – 21:24].

3.       When he learned that his Twitter feed had been imbedded into the page of the President of the Board's on the City's website, Lewis Reed ordered that it be removed. [Ex. B, 20:13 – 21:24].

4.       Reed created the Twitter account for his own private use; he was not directed or asked to create the account by the City of St. Louis, nor was the account created for him by the City for his official use as President of the Board. [Ex. C, Affidavit of Lewis Reed, ¶ 1].

5.       Reed's autobiographical account of himself on Twitter reads: "Father of 4 great kids, husband, public servant, life long democrat, proud St. Louis City resident, President of the Board of Aldermen." [Ex. A, pgs. 40:20 – 41:16, 56:19 – 57:3; Ex. D, Defendant's Responses to Plaintiff's Requests for Admissions, ¶ 5].

6.       Reed has changed the "handle" of his Twitter account to reflect his election campaigns for public offices, including "Reed4Mayor" when he ran for the St. Louis mayoralty. [Ex. A, pg. 38:18 – 39:6, 39:17 – 40:3, Ex. 17].

7.       Reed uses Twitter and other social media sites to communicate with persons throughout the United States, including friends and family, for campaign purposes, and to alert the

media. [Ex. A, pgs. 37:1-7, 60:7-17; Ex. E, Deposition of Lewis Reed, Vol III, 08.30.21, pg. 18:18-23].

8.      Reed does not use Twitter to communicate directly with his constituents in his role as President of the Board of Aldermen of the City of St. Louis. [Ex. A, pg. 37:1-7, 60:7-17, 89:5-25; Ex. E, pg. 18:15-25].

9.      When communicating online with constituents in his capacity as President of the Board, Reed prefers to use the social media site "NextDoor." [Ex. A, pgs. 61:19 – 62:9, 89:5-25].

10.     The profile pictures Reed has used for his Twitter account are photographs taken in furtherance of an election campaign, and was paid for by that campaign. [Ex. A, 53:16 – 55:21].

11.     Reed has never used Twitter to hire or fire any member of his staff. [Ex. C, ¶ 2].

12.     Reed has never used Twitter to introduce bills in the Board of Aldermen. [Ex. C, ¶ 3].

13.     Reed has never used Twitter to make or submit comments or statements in any committee hearing or meeting. [Ex. C, ¶ 4].

14.     Reed has never used Twitter to cast a vote in the Board of Aldermen. [Ex. C, ¶ 5].

15.     Reed has never used Twitter to issue orders or directives to his staff. [Ex. C, ¶ 6].

16.     Reed has never referred to any of his statements on Twitter as his "official statements," nor has Reed directed anyone to view his tweets to ascertain any of his official positions in his capacity as President of the Board of Aldermen. [Ex. C, ¶ 7].

17.     Reed has never used Twitter to officially communicate with other members of City government. [Ex. C, ¶ 8].

18.     Reed has never used Twitter to discipline or censure members of the Board in his capacity as Board President. [Ex. C, ¶ 9].

19.     Reed has never used Twitter to exclude or expel non-members of the Board from the Board's floor or chamber. [Ex. C, ¶ 9].

20.     Reed unblocked Felts from her Twitter account. [Ex. C, ¶ 11; Ex. F, Defendant's Interrogatory Responses, ¶ 6].

21.     Plaintiff Felts sues Defendant Reed in his official capacity only. [Complaint, Doc. 1, pgs. 1-3, ¶ 4].

22.     The Charter of the City of St. Louis vests the legislative power of the City in its Board of Aldermen, which consists of "a president" elected by all voters of the City and twenty-eight members elected by residents of wards. [Ex. G, St. Louis Charter, Art. IV, §§ 1, 3, 8, 11, 23, 25, &26].

23.     Specifically, the Charter of the City of St. Louis provides that Board President "shall preside" at all meetings of the Board. [Ex. G, St. Louis Charter, Art. IV, § 3].

24.     The Charter of the City of St. Louis vests the executive power of the City in a mayor, and delineates further the powers and duties of the mayor. [Ex. I, St. Louis Charter, Art. VII, § 1]. The Charter specifically provides: "The mayor…shall have and exercise all the executive power of the city. He shall exercise a general supervision over all the executive affairs of the city and see that each officer and employee performs his duty and that all laws, ordinances, and charter provisions are enforced….He shall appoint and may remove all nonelective officers and all employees…and see that all contracts with the city are performed….He shall have a seat and voice and may introduce ordinances…in the board of aldermen….[and] may remit, with or without condition, fines costs, forfeitures and penalties imposed for violation of any ordinance….[and he] may examine the affairs and conduct of any department, board or office and require all officers to

exhibit their accounts and papers and make reports to him." [Ex. H, St. Louis Charter, Art. VII, § 1].

26.   The City of St. Louis has promulgated social media policies, which provide that "official social media accounts for any of the City's departments may only be established with the approval of the appointing authority or his/her designee for the department utilizing such social media account." [Ex. I, City of St. Louis Department of Personnel Administrative Regulation No 150 Use of Technology Resources and Social Media Policy, 9/28/18, pg. 3 section V].

26.   The legal opinion expressed in the letter contained within Plaintiff's Exhibit 29 was solicited by and paid for by the campaign of Lewis Reed, and not by Lewis Reed in his capacity as President of the Board of Aldermen. [Ex. A, 95:5 – 97:19].

27.   Lewis Reed has received death threats and frightening verbal abuse directed both against himself and his family members. [Ex. A, 106:20 – 108:16; 114:19 – 115:19; 120:2-10; 130:9-19; Ex. E, pg. 32:4-17].

Respectfully submitted,

**SHEENA HAMILTON**
**CITY COUNSELOR**

By: _____/s/ Steven R. Kratky_____
Steven R. Kratky, #61442MO
Assistant City Counselor
City of St. Louis Law Department
City Hall  |  Room 314
Saint Louis MO  63103
Tele: 314-622-4618
Fax:  314-622-4956
KratkyS@stlouis-mo.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and complete copy of the foregoing was served upon all counsel of record via the Court's electronic filing system on this 10th day of November, 2021.


_____/s/ Steven R. Kratky_____