IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SARAH FELTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 4:20-cv-00821-JAR |
| ) | |
| LEWIS REED, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

As all of the parties' filings on the cross-motions for summary judgment now conclusively demonstrate, both Plaintiff and Defendant agree on the core basic facts of this lawsuit: Defendant Reed did block Plaintiff from his Twitter account based upon his objection to her rhetoric. Plaintiff has larded the record with voluminous individualized assertions of "fact," but they're largely irrelevant. The City of St. Louis has a formally promulgated social media policy, which explicitly sets forth the procedure to create an "official" account of the City. Lewis Reed created his account on his own initiative, and not at the request or direction of the City of St. Louis. The account belongs to *him*, personally, and not to the City or to the Office of the President of the Board of Aldermen. These facts, which are not in dispute, are dispositive. Lewis Reed is entitled to judgment as a matter of law in that he did not act under color of law when he blocked her from his Twitter account, and in any event he is not a final policymaker for the City of St. Louis.

## I. LEWIS REED IS NOT A FINAL POLICYMAKER THUS PLAINTIFF CANNOT ESTABLISH *MONELL* LIABILITY AGAINST THE CITY

Plaintiff implicitly concedes that by suing Lewis Reed in his official capacity as President of the Board of Aldermen only, she must satisfy the requirement of *Monell* and its progeny that Lewis Reed's act in blocking her from his Twitter account was done in "execution of [the City's] policy or custom." ***Monell v. Dep't of Soc. Servs.***, 436 U.S. 658, 694 (1978). Plaintiff argues shes meets her burden because Defendant Reed was a "final policymaker." Doc. 92, PageID 1276-1282. The argument fails, however, in its reliance on the faulty premise that Lewis Reed's authority over his own office is tantamount to authority over the entire City of St. Louis. Moreover, Plaintiff's argument also ignores that the City *has* established an official social media policy, through its Department of Personnel, meaning the President of the Board of Aldermen does not have "final policymaking authority" on the use or misuse of social media. There are no material facts in dispute, and Defendant Reed is entitled to judgment as a matter of law.

Again, it is only those "officials or governmental bodies who speak with final policymaking authority for the local governmental actor *concerning the action alleged* to have caused the particular constitutional or statutory violation at issue" who can fairly be said to have acted on behalf of or in the name of the municipality. ***Dean v. Cty. of Gage***, 807 F.3d 931, 940 (8th Cir. 2015) (county sheriff possesses "final policymaking authority" in law enforcement matters, making § 1983 liability against county proper in case alleging constitutional violations by law

enforcement activities) (emphasis added). To hold otherwise would defeat the very prohibition against *respondeat superior* liability *Monell* established. ***Id.***

Plaintiff has herself submitted the City's social media policy. [Plaintiff's Statement of Additional Facts, Doc. 91, ¶ 8, PageID 1087]. The City's social media policy is promulgated by the Director of Personnel, and this policy has been in place since at least September 28, 2018. Doc. 91, ¶ 8. No ordinance has been passed by the Board of Aldermen rescinding this regulation or in any other way revoking 0the Director of Personnel's authority to promulgate such regulations on behalf of the City of St. Louis. Accordingly, it is the Personnel Director who has "final policy making authority" *in the area of social media*, not President Reed.

Plaintiff's attempt to conflate the Office of the Board President with the City itself likewise fails. An official's high rank is insufficient to establish *Monell* liability as a "policymaker." ***Danielson v. Huether***, 355 F. Supp. 3d 849, 873 (D.S.D. 2018) (the "fact that [defendant] may have some general policymaking authority as mayor does not mean that the City of Sioux Falls is liable under *Monell* for every action" he took). Plaintiff's own cited cases all stand for this same basic proposition: a final decision maker for purposes of establishing *Monell* liability is the individual who has the power to make a specific decision to which no one else has a reasonable claim. For example, the defendant in *Williams*, a municipal court judge with superintending authority over that court, was delegated the hiring and firing authority over an municipal court employees such as court clerks. ***Williams v. Butler***, 863 F.2d 1398, 1402 (8th Cir. 1988). No one else in that municipality *could* have authority to make

hiring or firing decisions other than that individual defendant.[1] Similarly, in *Ware v. Jackson County*, it was held that the jail superintendent was the "final policymaker" *in relation to the discipline of jail employees*. **Ware v. Jackson Cty.**, 150 F.3d 873, 886 (8th Cir. 1998). When an individual municipal employee is terminated, the decision-maker *is* the municipality for all intents and purposes. There is no other authority. *See* **Williams**, 863 F.2d at 1403. ("Because he was given final policymaking authority, Butler was, in effect, the City; his actions were the City's actions."). In both cases, the employees were employees *of the municipality*, but by law the authority to hire or fire was delegated down to the chief administrator of the unit of government. The administration of the municipal court in *Williams*, and the jail in *Ware*, were of themselves municipal functions exercised by those municipalities. The court and the jail were expressly authorized, created, and administered pursuant to statute and/or ordinance.

In stark contrast, running a social media account is not a core governmental function, or a governmental function at all. Lewis Reed was not the only person affiliated with the City of St. Louis who operated social media accounts. Nothing in the Charter of the City or its code of ordinances vests the President of the Board of Aldermen with special powers or duties with respect to social media sites, or blocking people from same, or, as Plaintiff would have it, of blocking *her* from social media accounts. The City *did* promulgate a social media policy, binding on all employees,

---

[1] Additionally, the Eighth Circuit noted that state statute expressly vested authority in the defendant to make hiring and firing decisions, which furthermore constituted the "excercis[e] of traditional municipal functions." **Williams**, 863 F.2d at 1403. Neither of which is the case here.

and it was promulgated through its Department of Personnel, not Lewis Reed as President of the Board of Aldermen.

Finally, Plaintiff claims that Defendant misunderstands or misapplies the *Monell* analysis in arguing that Defendant is a legislator who did not have authority over free speech and social media issues. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Doc. 92, PageID 1281-1282. It is Plaintiff who is apparently confused. Defendant Reed does not argue that simply because he is a legislative officer rather than an executive one he *cannot* be held to be a "final policymaker." Instead, Defendant Reed's argument is that it is executive officials who are the most likely to satisfy the test to be a final policymaker, whereas legislative officials typically are not. This simply stands to reason under American political theory: a member of a legislative body cannot, on her own, enact policy, whereas the nature of an executive means that such an official *can*. The fact that Defendant Reed is a legislative official is not dispositive on its own, but it certainly supports the fact that he does not have the ability by unilateral action to fairly be said to be acting on behalf of or in the name of the City of St. Louis itself, as demanded by *Monell*. Accordingly, Defendant Reed's Motion for Summary Judgment should be granted because he is entitled to judgment as a matter of law.

## II. DEFENDANT REED WAS NOT OPERATING UNDER COLOR OF LAW

Plaintiff has the burden to establish that Defendant Reed was operating under color of law when he blocked her from his Twitter account. **Roe v. Humke**, 128 F.3d 1213, 1215 (8th Cir. 1997). As Defendant Reed demonstrated in his Motion for

Summary Judgment and Memorandum in Support, Plaintiff cannot meet this burden for the simple reason that President Reed's Twitter account is his private account, and not an official account of the City of St. Louis or the Office of the Board President. Docs. 79-81. Plaintiff's arguments to discount this fact are unavailing.

Plaintiff's most significant error in this regard is her mischaracterization of the role Defendant Reed's staff played when they assisted him with his Twitter account. Plaintiff takes the facts that the Office of the Board President has employees, that Defendant Reed is the Board President, and that these employees are persons who have helped him with his Twitter account, and declares that they were acting in their capacities as City employees when they assisted Defendant with his Twitter account. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Doc. 92, pageID 1286-1287, Plaintiff's Statement of Additional Facts, Doc. 91, ¶¶ 17-19, 30-36, and 50-51, pageID 1087*ff*. However, Defendant Reed and his staff were quite clear in stating that his staff persons were also volunteers on his campaign. Defendant's Statement of Additional Material Facts, Doc. 90, pageID 936, ¶ 1. Defendant Reed did not use City resources in the operation of his Twitter account. Plaintiff's factual sleight of hand fails to contradict that fact.

Beyond the erroneous claim that City employees (or any other City resources) were used to support Defendant Reed's Twitter account, Plaintiff is left with scattershot examples of what Plaintiff claims makes Defendant Reed's activity on Twitter tantamount to the exercise of "power possessed by virtue of state law and made possible *only because* the wrongdoer is clothed with the authority of state law."

*Campbell v. Reisch*, 986 F.3d 822, 825 (8th Cir. 2021) (citation omitted) (emphasis added). For example, Plaintiff points to a handful of examples when President Reed used his Twitter account to communicate with constituents and other governmental officials. Plaintiff's Memorandum in Opposition Doc. 91, pageID 1284-1287. Yet Twitter was by no means the exclusive means President Reed communicated with others, and in fact was not even his preferred method. DSUMF, Doc.80, ¶¶ 12-14.

Lewis Reed created his Twitter account of his own initiative. DSUMF, Doc.80, ¶¶ 7-8. Since that time, all of the uses of that account by Defendant Reed that Plaintiff recites in the hopes of transforming it into an official one of the Office of the Board President are equally consistent with the way any politician might use her personal account: to tout her achievements and to signal to the public and other elected officials their personal views on policy. *Reisch*, 986 F.3d at 827 (Tweets of Missouri state representative regarding her actions and votes in the General Assembly "were consistent with a desire to create a favorable impression of Reisch in the minds of her constituents," rendering the account "in the ambit of her personal pursuits.")

There is a very fine—sometimes almost imperceptible—distinction between actions of an elected officeholder that are official, governmental acts, which have some legal consequence or import, and those acts that are mere "politicking." Local elected officials are famous for attending neighborhood meetings, showing up at church potlucks and parish picnics, cutting ribbons, leading parades, and giving speeches to political action clubs, as but a few examples—"kissing babies" and "pressing the flesh" as the popular expressions go. Invariably, these elected officials

identify themselves as such, and their conversations with citizens will often turn to public policy and votes or other official actions taken by the office holder, but these examples of "politicking" are not *official acts* of the office holder *as* an office holder. Lewis Reed has done each and every one of these things, and his usage of his Twitter account is simply an another example of this very politicking that all elected officials—the successful ones, anyway—engage in, but that is not tantamount to an action of the government of which they are a part. This common impulse to politick is natural, even beneficial to the health of the Republic. Indeed, even the Founding Fathers found it "essential to liberty" that those entrusted with power maintain "immediate dependence on, and an intimate sympathy with, the people," which can only be ensured by "frequent elections." **THE FEDERALIST, No. 52**. (arguing in favor of the two-year term of United States Representatives proposed in the Constitution).²

Important as politicking may be, it is not conduct taken "under color of state law." Lewis Reed created and operated his Twitter account for his own, private purposes. That such purposes sometimes converged with the public's interests does not transform the account into a governmental one. Accordingly, Defendant Reed was operating "in the ambit of [his] personal pursuits," and is entitled to judgment as a matter of law. ***Reisch***, 986 F.3d at 824.

## CONCLUSION

There will come a day when Lewis Reed is no longer the President of the Board of Aldermen. When that day comes, he will turn in the keys to his corner office on the

---

² A copy of the text may be found at:
https://guides.loc.gov/federalist-papers/text-51-60#s-lg-box-wrapper-25493428

second floor of City Hall, his name scraped from the doors. Calls to the office line listed on the City's website will no longer be for him. His portrait will be removed from the City website. His official City email account will be deactivated, and he will have to surrender his prime parking spot at City Hall. He won't even be able to walk onto the floor of the Board without the permission of whoever is the Board President. Nevertheless, after his last day in office, despite losing all these perks and "trappings of office," Mr. Reed will still be tweeting from the same account he blocked Plaintiff from. That is because it is his *personal* account, and not an account of the City of St. Louis or of its Board President. Accordingly, Lewis Reed's Twitter account at issue in this lawsuit is not an official account, thus his blocking of Plaintiff from it can in no way be considered to have been done under color of law, or to constitute an official policy of the City of St. Louis.

There are no material facts in dispute, and Defendant Lewis Reed is entitled to judgment as a matter of law.

Respectfully submitted,

**SHEENA HAMILTON
CITY COUNSELOR**

By:  /s/ Steven R. Kratky
Steven R. Kratky, #61442MO
Assistant City Counselor
City of St. Louis Law Department
City Hall  |  Room 314
Saint Louis MO  63103
Tele: 314-622-4618
Fax:  314-622-4956
KratkyS@stlouis-mo.gov

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and complete copy of the foregoing was served upon all counsel of record via the Court's electronic filing system on this 23rd day of November, 2021.

                                            /s/ Steven R. Kratky