**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

SARAH FELTS,                        )
                                  )
           Plaintiff,       )
                                  )
     v.                      )     Case No. 4:20-cv-821-JAR
                                  )
LEWIS E. REED,                )
ST. LOUIS BOARD OF ALDERMEN,  )
PRESIDENT,                )
                                  )
          Defendant.     )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**STATEMENT OF MATERIAL FACTS**

Plaintiff Sarah Felts, by and through her undersigned counsel, provides the following Response to, and Additional Facts in opposition to, Defendant's Statement of Uncontroverted Material Facts in Support of his Motion for Summary Judgment.

**RESPONSE TO DEFENDANT'S STATEMENT**
**OF MATERIAL FACTS**

1.     Reed is the President of the Board of Aldermen of the City of St. Louis. [Ex. A, Tr. Dep. Lewis Reed 08.13.21, 5:13-18, 22:8-18].

**RESPONSE: Uncontested.**

2.     Reed was first elected to the office of President of the Board of Aldermen in 2007. [Ex. A, pg. 22:8-12; Answer of Defendant, Doc. No. 26, ¶ 10].

**RESPONSE: Uncontested.**

3.     Felts was, on January 26, 2019, a resident of the City of St. Louis, who engages on the social media platform Twitter under at least three different account names or "handles"

@SarahFelts, @PPMO_Advocates, and @15thWardDems. [Deposition of Sarah Felts Felts, Ex. B, pgs. 6:14-17, 7:17 – 8:20].

**RESPONSE: Uncontested that Ms. Felts operates a personal Twitter account under the handle @SarahFelts, which she uses to engage in political and other discourse.  To the extent Defendant claims Ms. Felts "engages" on Twitter under the handles @PPMO_Advocates and @15thWardDems, this is not supported by the evidence cited. Exhibit 26, Excerpts from Transcript of Deposition of Sarah Felts, 7:11–8:01, 8:12–20. Ms. Felts testified she tweets on behalf on her employer from the account with the handle @PPMO_Advocates and that she had "access to" the account with the handle @15thWardDems. *Id.***

4.　　　Sarah Felts is a politically active and engaged St. Louisan, and both supported, and volunteered for the campaigns of, St. Louis elected officials such as Megan Green and Tishaura Jones. [Ex. B, pgs. 19:10 – 24:22, 32:10-13].

**RESPONSE: Uncontested.**

5.　　　Felts moved to St. Louis in the summer of 2016. [Ex. B, pg. 31:3-4].

**RESPONSE: Uncontested.**

6.　　　Ms. Felts engages politically on Twitter, and often poses questions to elected officials on Twitter by "tagging" them, including Mr. Reed. [Complaint, ¶ 9; Ex. B, pg. 9:18-25; Exhibit C, Plaintiff's Responses to Defendant's Request for Production, 7, 9, 11, 77].

**RESPONSE: Uncontested.**

7.　　　Reed created his Twitter account sometime in March 2009, and has continued to use it to the present day. [Ex. A, 39:10, 42:7-8; Ex. D, Affidavit of Lewis Reed, ¶ 11].

**RESPONSE: Uncontested.**

8.      Reed created the Twitter account for his own private use; he was not directed or asked to create the account by the City of St. Louis, nor was the account created for him by the City for his official use as President of the Board. [Ex. D., ¶ 1].

**RESPONSE: Contested as to the assertion that Reed created the account for his own private use. Reed created his Twitter account in 2009 with the handle @PresReed (the "Account"), referencing his elected office. *Infra* Add'l Facts ¶ 22. Members of Reed's staff had access to the Account and helped him draft and post tweets on the Account. *Id*. ¶¶ 30–35. Members of Reed's staff created graphics that were posted on the Account. *Id*. ¶ 36. At the request of President Reed, a staff member of the Office of the President of the Board of Aldermen directed the City's Manager of Internet Services for the Information Technology Services Agency to create a webpage for the Office of the President of the Board of Aldermen on the city's website. *Id*. ¶¶ 37, 39. An email from President Reed's staff member to the Manager of Internet Services, on which President Reed was copied, specifically directed that the webpage should include an embedded live feed of the Account's tweets. *Id.* ¶ 38. The Manager of Internet Services embedded the live feed of the Account's tweets on the webpage and it remained on the page until June 2020. *Id*. ¶¶ 42–43. President Reed's profile on the city's website still links to the Twitter account associated with the handle @PresReed. *Id*. ¶ 44. At least as late as December 28, 2020, the Account included a link that directed visitors to the webpage for the Office of the President the Board of Aldermen, which provides access to President Reed's government email, phone number, and office address. *Id*. ¶ 45. Reed used the account to interact with his constituents and request their input and feedback. *Id*. ¶¶ 28, 54–55. Reed used Twitter to announce a Coronavirus special committee he had created in his role as president of the Board of Aldermen *Id*. ¶ 49. Reed posted a tweet**

detailing legislation that he had filed that day regarding certain use of force policies. *Id*. ¶ 51. Reed tagged the Twitter account of Missouri Governor Mike Parson in a tweet in an attempt to encourage the Governor to send money to St. Louis. *Id*. ¶ 52. Reed used Twitter to announce his intention to introduce a bill regarding the city's annual budget. *Id*. ¶ 53. Reed posted press releases on the Account. *Id*. ¶¶ 56, 60. Reed posted a tweet about a legal opinion that he received addressed to him in his capacity as President of the Board of Aldermen. *Id*. ¶ 57. On April 13, 2021, President Reed posted a message on Twitter that stated: "Today, my office along with @LydaKrewson @STLFireDept @WomensVoicesSTL announced a new partnership with 'Lock it for Love' to provide free gun locks to anyone who needs one at all 30 fair stations - NO QUESTIONS ASKED!" *Id*. ¶ 59. Uncontested as to the fact that Reed created the Account and that no other city official created the Account for him or instructed him to create the Account.

9.      Reed has sole authority over his Twitter account. [Ex. A, pgs. 43:4-11,].

**RESPONSE: Uncontested that President Reed's authority over the Account is sole insofar as no entity within city government constrains President Reed's use of the Account in his capacity as President of the Board of Aldermen and that he has also used this authority to provide employees of his office with access to the Account. *Id.* ¶¶ 30–35.**

10.      Reed's autobiographical account of himself on Twitter reads: "Father of 4 great kids, husband, public servant, life long democrat, proud St. Louis City resident, President of the Board of Aldermen." [Ex. A, pgs. 40:20 – 41:16, 56:19 – 57:3; Ex. E, Defendant's Responses to Plaintiff's Requests for Admissions, ¶ 5].

**RESPONSE: Uncontested that the Twitter bio of Mr. Reed's account currently so reads.**

4

11.     Reed has changed the "handle" of his Twitter account to reflect his election campaigns for public offices, including "Reed4Mayor" when he ran for the St. Louis mayoralty. [Ex. A, pg. 38:18 – 39:6, 39:17 – 40:3, Ex. 17].

**RESPONSE: Uncontested that he changed the Account's handle. Contested insofar as the statement implies that the handle always reflects his campaigns for public office. From the time President Reed created the Account in 2009 until the filing of this lawsuit, he changed the account handle only once, for a 6-month period from October 3, 2012 to April 7, 2013, to reflect that he was running for office.** *Infra* **Add'l Facts ¶ 24. After the filing of this lawsuit, he changed the account handle from December 2, 2020 to March 3, 2021 to reflect a run for office.** *Id***. ¶ 26. He did not change the account handle while running for reelection as President of the Board of Aldermen in 2011, 2015, and 2019.** *Id***. ¶¶ 1, 23–26.**

12.     Reed uses Twitter and other social media sites to communicate with persons throughout the United States, including friends and family, for campaign purposes, and to alert the media. [Ex. A, pgs. 37:1-7, 60:7-17; Ex. F, Deposition of Lewis Reed, Vol III, 08.30.21, pg. 18:18-23].

**RESPONSE: Uncontested that President Reed claims he has, on some occasions over the 12 years he has operated the Account, used Twitter and social media sites for the listed purposes. Contested to the extent that the statement implies these purposes are the exclusive or predominant uses of the Account. President Reed has used the Account to issue press releases from the Office of the President of the Board of Aldermen,** *infra* **Add'l Facts ¶¶ 56, 60, announce activities of the Office of the President of the Board of Aldermen,** *id***. ¶¶ 49, 51, 59, request feedback from his constituents,** *id***. ¶¶ 28, 54–55, talk to members of Missouri government,** *id***. ¶ 52, and address members of the public.** *Id***. ¶¶ 56, 60.**

5

13.     Reed does not use Twitter to communicate directly with his constituents in his role as President of the Board of Aldermen of the City of St. Louis. [Ex. A, pg. 37:1-7, 60:7-17, 89:5-25; Ex. F, pg. 18:15-25].

**RESPONSE: Contested. President Reed admitted that he "uses his Twitter account to interact with and engage with his constituents regarding important official policies."** *Infra* **Add'l Facts ¶ 28. Among other examples, on May 7, 2021, Reed used the Account to post a tweet that encouraged members of the public to be a part of the hearing process of a bill regarding the city's annual budget that morning.** *Id.* **¶¶ 53–54. On June 30, 2021, President Reed posted a tweet inviting members of the public to participate in a Board of Aldermen meeting to voice their opinions about how they believed funds from the American Recovery Act should be spent by the city, tweeting "[i]f you own a city business or nonprofit or support a city business or nonprofit, we want to hear from you."** *Id.* **¶ 55.**

14.     When communicating online with constituents in his capacity as President of the Board, Reed prefers to use the social media site "NextDoor." [Ex. A, pgs. 61:19 – 62:9, 89:5-25].

**RESPONSE: Uncontested but immaterial.**

15.     The profile pictures Reed has used for his Twitter account are photographs taken in furtherance of an election campaign, and was paid for by that campaign. [Ex. A, 53:16 – 55:21].

**RESPONSE: Uncontested to the extent that Reed testified that two of the photographs he used for the Account's profile picture were taken by a photographer who was hired by his campaign. Exhibit 2, Excerpts from Transcript of Deposition of Lewis Reed, Volume I, Aug. 13, 2021, 53:16–56:17. To the extent Defendant claims these two photographs encompass all profile pictures Reed has used for his Twitter account or that all profile pictures Reed has**

ever used for his Twitter account were taken in furtherance of an election campaign, this is not supported by the evidence cited.

16.    Reed has never used Twitter to hire or fire any member of his staff. [Ex. D, ¶ 2].

**RESPONSE: Uncontested.**

17.    Reed has never used Twitter to introduce bills in the Board of Aldermen. [Ex. D, ¶ 3].

**RESPONSE: Uncontested.**

18.    Reed has never used Twitter to make or submit comments or statements in any committee hearing or meeting. [Ex. D, ¶ 4].

**RESPONSE: Uncontested.**

19.    Reed has never used Twitter to cast a vote in the Board of Aldermen. [Ex. D, ¶ 5].

**RESPONSE: Uncontested.**

20.    Reed has never used Twitter to issue orders or directives to his staff. [Ex. D, ¶ 6].

**RESPONSE: Uncontested.**

21.    Reed  has  never  referred  to any  of  his statements on  Twitter  as his "official statements," nor has Reed directed anyone to view his tweets to ascertain any of his official positions in his capacity as President of the Board of Aldermen. [Ex. D, ¶ 7].

**RESPONSE: Uncontested that Reed personally did not refer to tweets from the Account using the specific words "official statements." Contested that Reed did not direct anyone to view his tweets to ascertain official positions in his capacity as President of the Board of Aldermen. President Reed stated he used Twitter to communicate with constituents about "official policies,"** *infra* **Add'l Facts ¶ 28. He characterized a tweet he posted as a "press advisory that I put out to let people know that it's important that we get the Board of E&A**

back in session to move the COVID-19 relief funding." *Id* ¶ 56. President Reed repeatedly used Twitter to post statements identified as having come from the Office of the President of the Board of Aldermen. *See, e.g.*, *id*. ¶¶ 47, 49, 51, 56, 59, 60.

22.     Reed has never used Twitter to officially communicate with other members of City government. [Ex. D, ¶ 8].

**RESPONSE: Contested. President Reed tweeted a letter to the members of the Board of Aldermen regarding issues the city was facing on letterhead indicating it was from the Office of the President of the Board of Aldermen. *Infra* Add'l Facts ¶¶ 47–48. On April 13, 2021, President Reed posted a message on Twitter regarding an initiative that the Office had started and tagged then-Mayor Lyda Krewson in the tweet. *Id.* ¶ 59.**

23.     Reed has never used Twitter to discipline or censure members of the Board in his capacity as Board President. [Ex. D, ¶ 9].

**RESPONSE: Uncontested.**

24.     Reed has never used Twitter to exclude or expel non-members of the Board from the Board's floor or chamber. [Ex. D, ¶ 9].

**RESPONSE: Uncontested.**

25.     On January 26, 2019, Plaintiff "retweeted" a statement or comment by Action St. Louis ("@ActionSTL"), which read: "Reeds asked to clarify his position on @CLOSEWorkhouse. He says we need to rework out court system. Eventually says yes, he does support the demand to close the workhouse but we need to change the messaging around it. [Complaint, Doc. 1, ¶ 26, Figure 6; Answer, Doc. 26, ¶ 26; Ex. B, pgs. 16:2 – 17:5].

**RESPONSE: Uncontested.**

26.     In her retweet of this statement by Action St. Louis, Ms. Felts wrote: "What do you mean by 'change the messaging around #CloseTheWorkhouse,' @PresReed? #STLBOA #alderrgeddon2019 #WokeVoterSTL". (quotation marks modified). [Complaint, Doc. 1, ¶ 26, Figure 6; Answer, Doc. 26, ¶ 26; Ex. B, pgs. 16:2 – 17:5].

**RESPONSE: Uncontested.**

27.     On January 26, 2019, Reed "blocked" Felts from his Twitter account. [Ex. A, pg. 126:3-4; Defendant's Answer, Doc. 26, ¶ 26, pgs. 9-11].

**RESPONSE: Uncontested.**

28.     Felts' tweet that caused Reed to block her was not a response or reply to Reed's account or a tweet of his, but rather was a re-tweet of a third-party account, to which Felts added commentary that "tagged" Reed. [Answer, Doc. 26, ¶ 26, Figure 6; Ex. B, pgs. 15:24 – 17:5].

**RESPONSE: Uncontested that Felts' tweet that caused President Reed to block her was not a reply to any of President Reed's tweets. To the extent Defendant describes Ms. Felts' addition as commentary, this is not supported by the cited evidence, which describes Felts' tweet as a "question." Exhibit 10, Defendant's Answer, ¶ 26, Figure 6; Doc. 80-2, 16:22.**

29.     On June 23, 2020, Felts filed the instant action against Reed alleging a violation of her First Amendment rights due to his blocking of her on Twitter. [Doc. 1].

**RESPONSE: Uncontested.**

30.     Reed unblocked Felts from her Twitter account. [Ex. D, ¶ 11; Ex. G, Defendant's Interrogatory Responses, ¶ 6].

**RESPONSE: Contested that Reed unblocked Felts "from her Twitter account." Exhibit D to Defendant's Statement of Uncontroverted Material Facts (Doc. 80-4) states President Reed's claim that "I have unblocked Ms. Felts from *my* Twitter account." Doc. 80-4, ¶ 11 (emphasis**

9

**added). Exhibit G to Defendant's Statement of Uncontroverted Material Facts (Doc. 80-7)
states that President Reed "made the decision to block Ms. Felts' Twitter account from Mr.
Reed's Twitter account." Doc. 80-7, Resp. to Interrog. No. 6. Uncontested that President
Reed unblocked Ms. Felts from the Account on or after June 23, 2020, but on or before
February 8, 2021. Exhibit 28, Declaration of Sarah Felts ¶ 5.**

31.     Plaintiff Felts sues Defendant Reed in his official capacity only. [Complaint, Doc.
1, pgs. 1-3, ¶ 4].

**RESPONSE: Uncontested.**

32.     The Charter of the City of St. Louis vests the legislative power of the City in its
Board of Aldermen, which consists of "a president" elected by all voters of the City and twenty-
eight members elected by residents of wards. [Ex. H, St. Louis Charter, Art. IV, §§ 1, 3, 8, 11, 23,
25, &26].

**RESPONSE: Contested that the full legislative power of the city is vested in its Board of
Aldermen. The Charter of the City of St. Louis provides that the "legislative power of the
City of St. Louis shall, *subject to the limitations of this charter*, be vested in a board of
aldermen." Doc. 80-8, St. Louis Charter, Art. IV, § 1 (emphasis added).**

33.     Specifically, the Charter of the City of St. Louis provides that Board President
"shall preside" at all meetings of the Board. [Ex. H, St. Louis Charter, Art. IV, § 3].

**RESPONSE: Uncontested.**

34.     The Charter of the City of St. Louis vests the executive power of the City in a
mayor, and delineates further the powers and duties of the mayor. [Ex. I, St. Louis Charter, Art.
VII, § 1]. The Charter specifically provides: "The mayor…shall have and exercise all the executive
power of the city. He shall exercise a general supervision over all the executive affairs of the city

and see that each officer and employee performs his duty and that all laws, ordinances, and charter provisions are enforced….He shall appoint and may remove all nonelective officers and all  employees…and see that all contracts with the city are performed….He shall have a seat and voice and may introduce ordinances…in the board of aldermen….[and] may remit, with or without  condition, fines costs, forfeitures and penalties imposed for violation of any ordinance….[and he]  may examine the affairs and conduct of any department, board or office and require all officers to  exhibit their accounts and papers and make reports to him." [Ex. I, St. Louis Charter, Art. VII, § 1 **RESPONSE: Uncontested that the Charter contains the quoted text, but contested that the excerpted language accurately reflects the provisions at issue. The Charter states: "[t]he  mayor shall be the chief executive officer of the city and,** *except as by law or in this charter  otherwise provided***, have and exercise all the executive power of the city." Doc. 80-9, St. Louis  Charter, Art. VII § 1 (emphasis added). Thus, the full executive power of the city is not vested  with the mayor to the extent the law provides. The law does in fact cabin the mayor's executive power; for example, the President of the Board of Aldermen's "Secretary and the  Administrative Assistant and Administrative Aide [are] appointed by him to serve at his  pleasure."** *Infra* **Add'l Facts ¶ 2.**

## DEFENDANT LEWIS REED'S RESPONSES TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

1.          Section 3.06.100 of the Revised Code of the City of St. Louis provides that "[t]he officers of the Board of Aldermen shall be a President who shall be elected by the qualified voters of the City on the first Tuesday of April every four years after the year 1915; a nonsalaried Vice- President; a clerk; an assistant clerk; an administrative assistant; a sergeant-at-arms; three secretaries; a receptionist/typist; a custodian and a counsel to the Board of Aldermen, each of whom, except the President, shall be appointed by the Board of Aldermen." Exhibit 1, Revised Code of the City of St. Louis § 3.06.100.

**RESPONSE: ADMITTED.**

2.          Section 3.06.120 of the Revised Code of the City of St. Louis provides that "[t]he Board of Aldermen may, by a vote of a majority of its members, remove any of its salaried officers and employees except the President, his Secretary and the Administrative Assistant and Administrative Aide appointed by him to serve at his pleasure." *Id.* § 3.06.120.

**RESPONSE: ADMITTED.**

3.          Section 3.06.230 of the Revised Code of the City of St. Louis provides for a "Secretary of the President of the Board of Aldermen [who] shall perform secretarial duties connected with the office of President as may be directed by him, shall be entitled to all privileges awarded other employees of the Board of Aldermen, and shall assist, if requested by other members of the Board of Aldermen and upon direction of the President, with other office work performed in the aldermanic chambers." *Id.* § 3.06.230.

**RESPONSE: ADMITTED.**

4.          President Reed testified that "[n]o," he does not answer to anyone "within the structure of the City of St. Louis government . . . ." Exhibit 2, Excerpts from Transcript

of  Deposition of Lewis Reed, Volume I, August 13, 2021, 22:19–21; *see also* Plaintiff's Statement  of Uncontroverted Material Facts (Doc. 77) ¶ 57.

       **RESPONSE: ADMITTED.**

     5.    President Reed makes "decisions about policies" regarding who is "authorized to  communicate on behalf of the [O]ffice." Ex. 2, 26:24–27:3; *see also* Doc. 77, ¶ 56.

       **RESPONSE: ADMITTED.**

     6.    President Reed drafts press releases "in [his] role as president of Board of Aldermen." Ex. 2, 31:24–32:2.

       **RESPONSE: ADMITTED.**

     7.    President Reed typically takes "a lead role in drafting [press releases] with assistance" from his staff. *Id.* at 30:18–31:8.

       **RESPONSE: ADMITTED.**

     8.    The city revised and reissued a Social Media Policy in May 2020. Exhibit 3, City  of St. Louis Social Media Policy (Shepard Dep. Ex. 5).

       **RESPONSE: ADMITTED.**

     9.    The Social Media Policy "establish[ed] rules for managing the City's official social  media sites and accounts." *Id.* at 1.

       **RESPONSE: ADMITTED.**

     10.    The Social Media Policy applies to civil service employees. Exhibit 4, Excerpts from Transcript of Deposition of Thomas Shepard, 94:4–20.

       **RESPONSE: ADMITTED.**

     11.    The Social Media Policy does not apply to public officials and appointed staff, such  as the staff of the Office of the President of the Board of Aldermen. *Id.*; *see also* Doc. 77,

¶ 55.

**RESPONSE: OBJECTION. This is a legal conclusion, and not a fact. Defendant Reed denies the legal conclusion that the City's social media policy does not apply to public officials and appointed staff. The policy speaks for itself, and it specifically contemplates a procedure by which an account is to be deemed an "official" account. Exhibit A, Administrative Regulation 150, Use of Technology Resources – Social Media Policy, Section V.**

12.      Thomas Shepard is the Special Assistant to the Office of the President of the Board of Aldermen. Ex. 4, 6:10–15, 13:20–24; *see also* Doc. 77, ¶ 8.

**RESPONSE: ADMITTED.**

13.      Thomas Shepard explained employees of the Office are not "civil service employees," and thus not "confined to the items that are issued by the director of personnel." Ex.  4, 94:2–17.

**RESPONSE: ADMITTED that Mr. Shepard so testified; denies the inference and legal conclusion that that Board President employees are not "confined to the items that are issued by the director of personnel."**

14.      President Reed stated that he is not bound by the Social Media Policy. Exhibit 5,  Defendant's Answers to First Interrogatories, No. 10; *see also* Doc. 77, ¶ 55.

**RESPONSE: ADMITTED.**

15.      President Reed, when asked to "[i]dentify any governmental policies relating to Twitter or social media that Mr. Reed used or abided by while using [the Account]," replied  "None." Ex. 5, Resp. to Interrog. No. 10.

**RESPONSE: ADMITTED that President Reed so testified; denies any inferences**

or legal conclusions to the effect that no policies of the City would apply to him and his office.

16.     Thomas Shepard agreed the City of St. Louis's social media policy was "something  that the director of personnel issue[d]." Ex. 4, 93:23–94:8; *see also* Doc. 77, ¶ 55.

**RESPONSE: ADMITTED.**

17.     All of President Reed's staff ultimately report to him. Ex. 4, 13:3–4; Exhibit 6, Excerpts from Transcript of Deposition of Mary Goodman, 9:11–16; *see also* Doc. 77 ¶ 16.

**RESPONSE: ADMITTED.**

18.     President Reed is the "ultimate person who has authority over" the Office employees. Ex. 2, 24:5–7; *see also* Doc. 77, ¶ 16.

**RESPONSE: ADMITTED.**

19.     This suit was initiated on the basis of "President Reed operat[ing] and oversee[ing]  the policy behind the Office of the President of the St. Louis Board of Aldermen's use of the  Twitter account '@PresReed.'" Ex. 7, ¶ 10.

**RESPONSE: OBJECTION: The cited material, "Ex. 7", is not identified and accordingly this statement is not properly supported and must be stricken. By way of further answer, this is a mere legal opinion, which Defendant Reed DENIES.**

20.     The complaint filed in this suit challenges "blocking her from access to" the  Account. *Id.* at ¶ 2.

**RESPONSE: ADMITTED.**

21.     The complaint filed in this suit is directed toward President Reed's policymaking authority over his public office's use of social media. *Id.* at ¶ 10.

**RESPONSE: OBJECTION: The cited material, "Ex. 7", is not identified and**

**accordingly this statement is not properly supported and must be stricken. By way of further answer, this is a legal conclusion, which Defendant DENIES. Defendant DENIES the conclusion that Plaintiff's Complaint.**

22.    President Reed created the Account in 2009 with the handle @PresReed, referencing his elected office. Ex. 2, 39:7-11; *see also* Doc. 77, ¶ 44.

**RESPONSE: ADMITTED.**

23.    From March 28, 2009 to October 3, 2012 the Account's screenname was @PresReed. Exhibit 8, Defendant's Twitter Archive Native Production, file titled "screen-name-  change.js."

**RESPONSE: ADMITTED.**

24.    For approximately six months, from October 3, 2012 to April 7, 2013 the Account screenname was @Reed4Mayor. *Id.* From April 7, 2013 to December 2, 2020 the Account screenname was @PresReed. *Id.*

**RESPONSE: ADMITTED.**

25.    The Account used the screenname @PresReed at the time this lawsuit was filed. *Id*;  *see also* Doc. 77, ¶ 49.

**RESPONSE: ADMITTED.**

26.    After this lawsuit was filed, for approximately three months, from December 2, 2020 to March 3, 2021, the Account screenname was @ReedForMayorSTL. Ex. 8; *see also* Doc.  77, ¶ 50.

**RESPONSE: ADMITTED.**

27.    Since March, 3, 2021 the Account screenname has been @LewisReedSTL. Ex. 8.

**RESPONSE: ADMITTED.**

28.     President Reed uses Twitter to "interact with and engage with his constituents regarding important official policies." Exhibit 9, Defendant Lewis Reed's Responses to First Requests for Admission, No. 32; *see also* Doc. 77, ¶ 53.

**RESPONSE: ADMITTED.**

29.     President Reed has interacted with Twitter users by replying to comments to the  Account's tweets. Ex. 10, ¶ 23; *see also* Doc. 77, ¶ 54.

**RESPONSE: ADMITTED.**

30.         The login credentials for the Account, including its username and password, have been possessed by at least two members of President Reed's staff. Ex. 5, No. 3; *see also* Doc. 77, ¶ 62.

**RESPONSE: ADMITTED.**

31.     At various times, President Reed requested Mr. Shepard's advice on what to post  on Twitter. Ex. 4, 44:7–23; *see also* Doc. 77, ¶ 64.

**RESPONSE: ADMITTED.**

32.     On occasion, President Reed requested that Mr. Shepard review tweets before they  were posted. Ex. 4, 44:24–45:1; *see also* Doc. 77, ¶ 65.

**RESPONSE: ADMITTED.**

33.     Ms. Goodman has posted tweets from the Account at the direction of President Reed. Ex. 6, 23:21–24:9; *see also* Doc. 77, ¶ 67.

**RESPONSE: ADMITTED.**

34.     President Reed has asked Ms. Goodman to review tweets before he posted them. Ex. 6, 17:19–21; *see also* Doc. 77, ¶ 68.

**RESPONSE: ADMITTED.**

35.     Ms. Goodman has made suggestions about what President Reed should post on the Account. Ex. 6, 18:10–12; *see also* Doc. 77, ¶ 69.

**RESPONSE: ADMITTED.**

36.     Members of President Reed's staff created graphics that President Reed posted to Twitter. Ex. 2, 72:23–73:19, 74:19–75:3, 84:5–14, 87:22–88:9 (President Reed explaining that if his staff understood he was working to get a message out they would create a graphic to go with the message); *see also* Doc. 77, ¶ 70.

**RESPONSE: ADMITTED.**

37.     President Reed personally directed the creation of the official webpage for the Office of the President of the Board of Aldermen. Ex. 6, 46:20–50:7; Exhibit 11, Excerpts from Transcript of Deposition of Sonja Pelli, 54:09–25; *see also* Doc. 77, ¶ 81.

**RESPONSE: OBJECTION. The material cited does not support this proposition. In the cited materials, Ms. Goodman testified that she initiated the general process of crafting the Office of the Board President's webpage on the City's official website based upon Lewis Reed's direction to "look into it;" Ms. Goodman otherwise took the initiative and made decisions on behalf of the Office without consultation or input from Lewis Reed; specifically, Ms. Goodman determined to have the Office's webpage mirror that of other elected officials.  Based upon Plaintiff's own cited materials, Defendant further answers DENIES.**

38.     On April 18, 2019, Ms. Goodman (who formerly went by Mary Ries) sent an email copying President Reed from her city-provided account to city employees Sonja Pelli and Zachary Kraft, who worked in the IT department, requesting the IT department set up a webpage for the Board of Aldermen President's Office that included an embedded live feed of

the Account. Ex. 6,  6:12–14, 44:13–46:15; Exhibit 12, April 18, 2019 Email from Mary Ries re

"Web Update Request"  (Goodman Dep. Ex. 5); *see also* Doc. 77, ¶ 71.

     **RESPONSE: ADMITTED.**

     39.    Sonja Pelli is the city "manager of internet services for the Information

Technology  services agency." Ex. 11, 7:24–8:6; *see also* Doc. 77, ¶ 76.

     **RESPONSE: ADMITTED.**

     40.    Ms. Pelli agreed that "that [Reed's Office] would be the final decision-maker

for… the [individualized] content that appears on the Board of Aldermen's President's Office

page." Ex. 11, 54:9–25; *see also* Doc. 77, ¶ 81.

     **RESPONSE: ADMITTED.**

     41.    The assistance of a member of the IT staff for the City of St. Louis would have

been  required to add an embedded Twitter feed to the webpage for the Office of the President

of the  Board of Aldermen. Ex. 11, 45:4–48:15; *see also* Doc. 77, ¶ 82.

     **RESPONSE: ADMITTED.**

     42.    The Account was embedded in the webpage for the Office of the President of

the  Board of Aldermen that was created after Ms. Goodman's request. Ex. 11, 44:11–16.

     **RESPONSE: ADMITTED.**

     43.    An embedded feed of the Account continued to appear on that webpage on June

12,  2020. Exhibit 13, Declaration and Expert Report of David R. Hinkle, ¶¶ 15–17.

     **RESPONSE: OBJECTION: the materials cited do not support this declaration;**

**Hinkle concluded only that he "was able to detect embedding code" up to that date, but**

**makes no representation or offers no opinion that a public user would have found**

**Defendant Reed's Twitter account embedded on the City's official website.**

44.     President Reed's profile on the City of St. Louis' website links to the Twitter page  currently associated with the @PresReed handle. Exhibit 14, Declaration of Andrew R. Stubbs, ¶¶ 3–4.

**RESPONSE: ADMITS that the City's official website lists Defendant Reed's postal address, telephone number, fax number, and links to Facebook and Twitter in a section titled "Contact Information;" DENIES any inference, implication, or assumption that the representations on the City's official website are accurate, or that they constitute a knowing endorsement or verification of accuracy by Defendant Reed.**

45.     At least as late as December 28, 2020, the Account included a link that directed visitors to the webpage for the Office of the President of the Board of Aldermen, which provides access to President Reed's government email, phone number, and office address. Ex. 10, ¶ 18; *see*  Doc. 77, ¶ 90.

**RESPONSE: ADMITTED.**

46.     President Reed stated that if he were doing something for a campaign purpose, he would avoid using city resources to do it. Exhibit 15, Excerpts from Transcript of Deposition of  Lewis Reed, August 30, 2021, Volume III, 9:3–10; *see also* Doc. 77, ¶ 72.

**RESPONSE: ADMITTED that Defendant Reed responded to the question put to him by Plaintiff's counsel that he would "avoid" using City resources for campaign purposes by stating "Absolutely, yes." Ex. 15, 9:3–10. DENIES any implication, inference or assumption that Defendant Reed in fact uses City resources for campaign purposes.**

47.     On March 21, 2020, President Reed posted tweets that included images of a letter  that he had sent to the Board of Aldermen written in response to issues the City of St. Louis was  facing in regard to the COVID-19 pandemic. Ex. 2, 62:21–64:25; Exhibit 16,

March 21, 2020  Letter from President Reed to Board of Aldermen re COVID Response (Reed Dep. Ex. 21); Exhibit 27, March 21, 2020 President Reed Tweet Posting Letter to Board of Aldermen re COVID Response (Reed Dep. Ex. 20); *see also* Doc. 77, ¶ 92.

> **RESPONSE: ADMITTED.**

48.    The letter attached to the March 21, 2020, tweet was written on letterhead that indicated it was from the Office of the President of the Board of Aldermen. Ex. 2, 65:1–7; Ex. 16; *see also* Doc. 77, ¶ 93.

> **RESPONSE: ADMITTED that it purportedly so "indicates"; DENIED as to any inferences, implications, or assumptions that it is official letterhead; Defendant Reed does have official letterhead, which this Exhibit 16 is not. *See* Exhibit B, Tweet of Lewis Reed dated 01/15/19 (Reed Depo Ex. 26).**

49.    On June 3, 2020, President Reed used Twitter to announce a Coronavirus special committee he had created in his role as president of the Board of Aldermen. Ex. 2, 70:06–71:03, 73:25–74:3; Exhibit 17, June 3, 2020 President Reed Tweet Announcing Coronavirus Task Force (Reed Dep. Ex. 22) (tweeting "I'm proud to announce the organization of the Coronavirus Special Committee of the #STLBOA"); *see also* Doc. 77, ¶ 95.

> **RESPONSE: DENIES any inference, implication, or assumption that the use of "announce" means that Twitter was the first or only place or medium by which Defendant Reed notified the general public; ADMITTED IN all other respects.**

50.    The June 3, 2020 tweet contained a graphic containing a City of St. Louis logo and the words "Update" and "COVID Special Committee." Ex. 17. This graphic was created by an employee in the Office of the President of the Board of Aldermen. Ex. 2, 72:23–73:19. The tweet also contains a link to a City of St. Louis government web page. Ex. 2, 73:20–24;

*see also* Doc. 77, ¶ 95.

**REPONSE: DENIES any inference, implication, or assumption that the graphic being "created by an employee in the Office of the President of the Board of Aldermen" means that the employee did so in his or her capacity as a City employee, did so on City time, or used City resources; individuals who work as employees in the Office of Board President also volunteer their own private time to assist Defendant Reed on his political campaigns. Exhibit C, Deposition of Lewis Reed, 8/13/21, 43:23 – 45:2; 46:7 – 47:3; 48:6-17; 49:9 – 50:3; 51:11-15. ADMITTED in all other respects.**

51.     On June 8, 2020, President Reed posted a tweet detailing legislation that he had  filed that day regarding certain use of force policies. Ex. 2, 74:07–18; Exhibit 18, June 8, 2020 President Reed Tweet re Board Bill 63 (Reed Dep. Ex. 23). The tweet included a graphic that was  created by an employee in Reed's office.  Ex. 2, 74:19–75:3; *see also* Doc. 77, ¶ 96.

**REPONSE: DENIES any inference, implication, or assumption that the graphic being "created by an employee in the Office of the President of the Board of Aldermen" means that the employee did so in his or her capacity as a City employee, did so on City time, or used City resources; individuals who work as employees in the Office of Board President also volunteer their own private time to assist Defendant Reed on his political campaigns. Ex. C, 43:23 – 45:2; 46:7 – 47:3; 48:6-17; 49:9 – 50:3; 51:11-15. ADMITTED in all other respects.**

52.     On November 10, 2020, President Reed posted a tweet that tagged the Twitter account of Missouri Governor Mike Parson in an attempt to ensure that the Governor had seen the  news story mentioned in the tweet and to "encourage them to send some of that money to the City  of St. Louis." Ex. 2, 101:9–102:11; Exhibit 19, November 10, 2020 President Reed

Tweet Tagging  Governor Mike Parson (Reed Dep. Ex. 29); *see also* Doc. 77, ¶ 97.

**RESPONSE: ADMITTED.**

53.    On May 7, 2021, President Reed used Twitter to announce his intention to introduce  a bill regarding the city's annual budget that morning. Ex. 2, 78:06–79:06; *see also* Doc. 77, ¶ 99.

**RESPONSE: DENIES any inference, implication, or assumption that the use of "announce" means that Twitter was the first or only place or medium by which Defendant Reed notified the general public; ADMITTED IN all other respects.**

54.    As a part of the thread attached to the May 7, 2021 tweet, President Reed also posted  a tweet that encouraged members of the public to be a part of the hearing process of the bill. Ex.  2, 80:1–19; Exhibit 20, May 7, 2021 President Reed Tweet Thread Encouraging Public  Participation in Budget Bill Process (Reed Dep. Ex. 24); *see also* Doc. 77, ¶ 100.

**RESPONSE: ADMITTED.**

55.    On June 30, 2021, President Reed posted a tweet inviting members of the public to  participate in a Board of Aldermen meeting to voice their opinions about how they believed funds  from the American Recovery Act should be spent by the city, tweeting "[i]f you own a city business  or nonprofit or support a city business or nonprofit, we want to hear from you." Ex. 2, 83:20–25; Exhibit 21, June 30, 2021 President Reed Tweet Soliciting Public Input re Expenditure  of  American Recovery Act Funds (Reed Dep. Ex. 25); *see also* Doc. 77, ¶ 101.

**RESPONSE: ADMITTED.**

56.    On July 16, 2021, President Reed posted a tweet that he stated was "a press advisory  that I put out to let people know that it's important that we get the Board of E&A back in session  to move the COVID-19 relief funding." Ex. 2, 99:21–24; Exhibit 22, July 16, 2021

President Reed  Tweet re Press Advisory (Reed Dep. Ex. 28); *see also* Doc. 77, ¶ 103.

    **RESPONSE: ADMITTED.**

57.    On July 30, 2021, President Reed posted a tweet about a legal opinion that he received, addressed to "the honorable Lewis E. Reed, President, City of St. Louis, Board of  Aldermen." Ex. 2, 94:21–95:4; Exhibit 23, July 30, 2021 President Reed Tweet Posting Legal  Opinion (Reed Dep. Ex. 27); *see also* Doc. 77, ¶ 104.

    **RESPONSE: ADMITTED. By way of further answer, Defendant Reed made explicit that the legal opinion was purchased by his campaign and was solicited for campaign purposes. Ex. C, 53:16 – 55:21**.

58.    The legal opinion related to a Board of Aldermen bill. Ex. 23 ("Today, myself alongside members of #STLBOA shared a legal opinion stating that if Board Bill 2 is enacted in  its current state it would NOT violate the federal treasury guidelines."); *see also* Doc. 77, ¶ 104.

    **RESPONSE: ADMITTED. By way of further answer, Defendant Reed made explicit that the legal opinion was purchased by his campaign and was solicited for campaign purposes. Ex. C, 53:16 – 55:21.**

59.    On April 13, 2021, President Reed posted a message on Twitter that stated: "Today,  my office along with @LydaKrewson @STLFireDept @WomensVoicesSTL announced a new  partnership with "Lock it for Love" to provide free gun locks to anyone who needs one at all 30 fair stations - NO QUESTIONS ASKED!" Exhibit 24, April 13, 2021 President Reed Tweet Announcing Gun Safety Initiative (Reed Dep. Ex. 43); Ex. 15, 9:11–10:09; *see also* Doc. 77, ¶ 106.

    **RESPONSE: ADMITTED.**

60.     On August 16, 2021, President Reed used his Twitter account to post an image of a press release from the Office of the President of the Board of Aldermen. Ex. 15, 10:10–12:06; Exhibit 25, August 16, 2021 President Reed Tweet re COVID Relief Funds (Reed Dep. Ex. 44); *see also* Doc. 77, ¶ 108.

**RESPONSE: ADMITTED.**

61.     The press release in the August 16, 2021 tweet included the seal of the Board of Aldermen for the City of St. Louis and the language at the top of the document indicated that it was from the Office of the President of the Board of Aldermen. Ex. 2, 11:06–12:06; *see also* Doc. 77, ¶ 109.

**RESPONSE: DENIES any inference, implication, or assumption that the letterhead was in fact the official letterhead of President Lewis Reed in his official capacity, which is notably different. *See* Ex. B. Otherwise, ADMITS.**

Respectfully submitted,

**SHEENA HAMILTON**
**CITY COUNSELOR**

By: ____/s/ Steven R. Kratky_____
Steven R. Kratky, #61442MO
Assistant City Counselor
City of St. Louis Law Department
City Hall  |  Room 314
Saint Louis MO  63103
Tele: 314-622-4618
Fax:  314-622-4956
KratkyS@stlouis-mo.gov

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and complete copy of the foregoing was served upon all counsel of record via the Court's electronic filing system on this 23rd day of November, 2021.

/s/ Steven R. Kratky