UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SARAH FELTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20-CV-821-JAR |
| | ) | |
| MEGAN E. GREEN, in her official capacity as | ) | |
| President of the Board of Alderman of the | ) | |
| City of St. Louis, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Plaintiff Sarah Felts' ("Felts") Motion for Attorneys'

Fees and Nontaxable Costs (ECF No. 170). Felts seeks attorneys' fees in the amount of

$131,193.00, and nontaxable costs in the amount of $15,073.68.   Felts also asks for $3,175.52 in a

Bill of Costs (ECF No. 172), with Supplement (ECF No. 175). Defendant Megan E. Green

("Defendant")[1] filed her opposition to Felts' Motion for Attorneys' Fees and Nontaxable Costs on

January 17, 2023. (ECF No. 181). Felts filed a reply on January 27, 2023. (ECF No. 184). This

matter is fully briefed and ready for disposition.

**A. Background**

On June 23, 2020, Felts filed this action pursuant to 42 U.S.C. § 1983 against Lewis Reed

in his official capacity as President of the Board of Aldermen of the City of St. Louis, alleging he

violated her First Amendment rights by blocking her from his Twitter account in an act of

viewpoint discrimination in a designated public forum. (ECF No. 1). Felts requested declaratory

---

[1] The Court uses the term "Defendant" generically since the defendant is the person holding the office of the President of the Board of Alderman of the City of St. Louis, which has changed during the course of this litigation. *See also* Fed. R. Civ. P. 25(d).

and injunctive relief, as well as nominal damages. The parties filed cross-motions for summary judgment (ECF Nos. 75, 79), which the Court denied, concluding that a question of fact existed as to whether Reed operated his Twitter account in his personal or official capacity. (ECF No. 101).

On June 7, 2022, Reed resigned as President of the Board of Aldermen, and Interim-President Joseph Vollmer was substituted for Reed. Vollmer then moved to dismiss this matter, arguing Felts' claims against him were moot in light of Reed's resignation. The Court dismissed Felts' claim for injunctive relief as moot, but declined to dismiss Felts' claims for declaratory relief, nominal damages, costs, and attorneys' fees. (ECF No. 127).

The case proceeded as a bench trial on the merits on June 29, 2022. Felts appeared in person and by counsel Lisa Hoppenjans, Tobin Raju, Molly Carney, Emily Lazaroff, Jessie Steffan, and Anthony Rothert; Vollmer appeared by counsel Steven Kratky. Evidence and testimony were adduced.   Reed appeared at trial with counsel and, when called to testify, invoked the Fifth Amendment. The Court directed the parties to file proposed findings of fact and conclusions of law within thirty days. (ECF No. 155).

In its Findings of Fact, Conclusions of Law and Order, the Court held that Reed maintained his Twitter Account as an elected official, used government resources – including City employees and web resources – to operate the Account, and administered the Account as a tool of governance to further his duties as Aldermanic President. As a result, Reed acted under color of state law and his actions are "fairly attributable" to the City. (ECF No. 167, ¶ 40). Further, the Court held that, because Reed used his Twitter Account for official business and the interactive portions of the Account were open for public comment, the interactive component constituted a designated public forum.   (ECF No. 167, ¶ 41).   The Court held that Reed's decision to block Felts from his Twitter Account based on the content of her tweet and to continue blocking her for months while the Account was clearly being used as a tool of governance was inconsistent with the First

– 2 –

Amendment, amounted to viewpoint discrimination, and established the deprivation of a constitutional right for purposes of her § 1983 claim.   (ECF No. 167, ¶ 46).   In sum, the Court held that the continued blocking of Felts based on the content of her tweet was impermissible viewpoint discrimination in violation of the First Amendment. The Court entered judgment in Felts' favor on her remaining claim for declaratory relief and awarded the sum of $1.00 in nominal damages for the constitutional violation. (ECF No. 167, ¶ 48). The Court stated that it would enter a final judgment following a determination of any claim for attorneys' fees. (ECF No. 167 at 19).

### B.  Standard for Attorneys' Fees

Section 1988 authorizes awards of reasonable attorneys' fees to a "prevailing party." 42 U.S.C. § 1988; *Dorr v. Weber*, 741 F. Supp. 2d 1022, 1028 (N.D. Iowa 2010). Thus, the initial question regarding the propriety of awarding attorneys' fees in a case such as this is whether the plaintiff can be characterized as a "prevailing party." *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 804 (8th Cir. 1993). The Supreme Court stated that a party is a "prevailing party" when he or she "'succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)(quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)); *Farrar v. Hobby,* 506 U.S. 103, 111 (1992) (a prevailing party is one who obtains "at least some relief on the merits of his claim"); *Casey,* 12 F.3d at 804).   The parties do not dispute that Felts was the prevailing party.

"Because Section 1988 does not define the term 'reasonable attorney's fee,' courts have adopted the 'lodestar approach'—the 'guiding light of ... fee-shifting jurisprudence'—in making that determination." *Ladd v. Pickering*, 783 F. Supp. 2d 1079, 1090–91 (E.D. Mo. 2011) (quoting *Perdue v. Kenny A. ex rel Winn,* 559 U.S. 542, 551 (2010) (citations omitted). Under the lodestar approach, the Court must multiply the reasonable number of hours expended by a reasonable hourly rate for each individual performing work. *City of Burlington v. Dague,* 505 U.S. 557, 559–

60 (1992). Although it provides an "initial estimate" of the appropriate amount to award, *Blum v. Stenson,* 465 U.S. 886, 888 (1984), the lodestar approach is strongly presumed to represent a reasonable fee.  *See Perdue*, 559 U.S. at 554 ("there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee").

### C. Discussion

#### 1. Attorneys' Fees

The Court begins by employing the lodestar method, which multiplies the number of hours worked by the prevailing hourly rate. *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 855 (8th Cir. 2021) (citing *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019)). The Court "may rely on reconstructed time entries to calculate the hours worked if those entries satisfactorily document the time," but it "should exclude hours that were not reasonably expended from its calculations." *Childress*, 932 F.3d at 1172 (cleaned up). Then, it "may reduce [the lodestar] if a plaintiff does not obtain all the relief ... sought." *Id.* When reducing the lodestar, "[t]he district court also may consider other factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 [(5th Cir. 1974)]." *Hensley*, 461 U.S. at 434 n.9.[2]

For purposes of lodestar analysis, Felts submits the following concerning her attorneys'

---

[2] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430, n.9.

hourly rates and the hours expended in this litigation:

| Attorney | Hours Worked | Hours Sought | Rate | Total |
|---|---|---|---|---|
| Anthony E. Rothert | 89.9 | 83.6 | 410 | 34, 276 |
| Lisa Hoppenjans | 62.4 | 57.6 | 325 | 18,720 |
| Jessie Steffan | 17 | 11.5 | 300 | 3,450 |
| Molly Carney | 130.3 | 79.25 | 300 | 23,775 |
| Tobin Raju | 60 | 37 | 275 | 10,175 |
| Emily Lazaroff | 65.5 | 0 | 275 | 0 |
| Law Students | 896.5 | 407.97 | 100 | 40,797 |
| Total | | | | 131,193 |

Felts' counsel voluntarily lowered the amount of their requested attorneys' fees.   Felts' counsel reduced their compensation nearly in half, which amounts to a $94,257.50 reduction in fees, in addition to the time voluntarily not submitted to this Court for consideration.   (ECF No. 171 at 11).[3]    Felts' counsel deducted various entries for substantive work, including time spent at trial, including examining trial witnesses, by Felts' attorneys aside from Ms. Hoppenjans and Mr. Rothert; attendance at depositions aside from the first chair attorney; and time spent by Ms. Hoppenjans and Mr. Raju reviewing or revising law student work or otherwise engaging in supervision of law students' work. Furthermore, the assistance of clinic students and law clerks reduced the number of hours required by attorneys with higher billing rates and, ultimately, the amount of fees for which reimbursement is sought.   (ECF No. 171 at 11).

In support of her request, Felts emphasizes her success obtained in this civil rights lawsuit. Although Felts was unblocked from Reed's Twitter Account at some point during the litigation,

---

[3] For example, Felts' counsel excluded all time spent by Ms. Lazaroff.   (ECF No. 171-1, ¶ 6).

Felts argues that she "and other members of the public now benefit from this Court's favorable determination on the merits of the declaratory relief claim." (ECF No. 171 at 14). Felts' counsel contends that the number of hours expended were necessary due to Defendant's "aggressive litigation strategy." (ECF No. 171 at 14).

Defendant does not take issue with the rates charged by Felts' counsel, other than the amounts charged for the law students. Defendant argues that Felts "should not receive compensation for work performed by students who were in [sic] enrolled in Professor Hoppenjans' First Amendment Clinic class and who received course credit for such work." (ECF No. 181 at 3). Defendant contends that, if the Court were to award fees for law students' work, then Washington University would receive a "windfall by pocketing both that student's tuition and the attorneys' fees filled out by the school in that tuition-paying student's name." (*Id.*)

As an initial matter, the Court notes that Felts' motion is supported by Declarations signed by her attorneys, describing their backgrounds and experience and providing details of their hours billed. (ECF Nos. 171-1, -2, -3, -4, -5). Felts maintains that the rates being requested by her attorneys are reasonable and within the range of market rates customarily charged by lawyers with similar experience and practice areas in Missouri. *See* ECF No. 171 at 7-10. Defendant does not dispute the background and experience of Felts' attorneys or the reasonableness of their requested hourly rates. Based on its experience with this case, with civil rights cases in general, and its knowledge of prevailing attorney hourly rates in this area and as awarded by this Court, the Court finds the requested hourly rates reasonable. *See Fernandez v. St. Louis Cnty., Missouri*, 538 F. Supp. 3d 888, 906 (E.D. Mo. 2021); *Willson v. City of Bel-Nor, Missouri*, No. 4:18-CV-003 RLW, 2021 WL 2255003, at *5-6 (E.D. Mo. June 3, 2021) (citing cases); *Felton Jennings v. City of Univ. City, Missouri*, No. 4:20-CV-00584 JAR, 2022 WL 17092329, at *3 (E.D. Mo. Nov. 21, 2022).

As to Defendant's objection regarding fees requested for students enrolled in Washington

University's legal clinic, the Court finds that Defendant's argument is not well-taken as the law student's work is "akin to legal support staff." *Felton Jennings*, 2022 WL 17092329, at *3, n.3. This Court finds Felts' counsels' utilization of law clerks and paralegals allowed the litigation to proceed in a "a more cost-effective fashion." *Id*. (citing *Davis v. Lancatser*, No. 4:13CV1638 HEA, 2019 WL 265098, at *4 (E.D. Mo. Jan. 18, 2019)). Further, the $100 per hour rate requested for law student work is reasonable and consistent with other awards in this District. *Id*. (citing *Koenig v. Bourdeau Const. LLC*, No. 4:13CV00477 SNLJ, 2014 WL 6686642, at *2 (E.D. Mo. Nov. 26, 2014) (billing rates in the St. Louis area for paralegals and law students range from $50.00 to $100.00 per hour)). Therefore, the Court finds that Felts' request for fees for law students' performance is proper and compensable, as requested.

For computation of the lodestar, the Supreme Court has provided guidance for attorney fee calculations under circumstances such as this:

> The district court … should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

*Hensley*, 461 U.S. at 434.   The Court recognizes that there has been some duplication of efforts by counsel, which is inherent in a well-staffed case and particularly so in a case staffed by a legal clinic. However, the Court holds that Felts' counsel addressed these redundant hours by essentially cutting their requested hours in half and excluding the hours of any lower-ranking or junior counsel.   In addition, the Court finds that Felts' counsels' time and efforts spent investigating and addressing Reed's exercise of his Fifth Amendment Right was not entirely necessary and largely tangential to the relevant issues.   The Court nevertheless finds that Felts' counsel has deducted their fee request sufficiently such that no additional reduction is necessary or appropriate.

– 7 –

In sum, the Court holds that Felts' counsel has provided adequate and sufficient support for their lodestar fee calculation.   The parties do not dispute that Felts was the prevailing party in this case. Although her counsel clearly expended superfluous time and effort in this case, the Court holds that Felts' counsel properly deducted hours spent that were redundant or for pedagogical purposes.   The Court awards Felts' counsel their fees in the amount of $131,193.00.

### 2.  Costs

#### a.  Non-Taxable Costs

Felts seeks to recover the expenses in the amount of $15,073.68, which were incurred in prosecuting this case.   The non-taxable costs include: cost of service by special process server ($442.98, subpoena on Twitter; $375, trial subpoenas); expert expenses ($1,360.20, travel expenses for trial; $11,088 for expert charges); and mediation costs ($1,807.50).   Felts' counsel notes that the expert witness billed 49.9 hours at a rate "greatly reduced from his ordinary fee." (ECF No. 171-1, ¶ 9).   Felts' counsel contends that these expert charges were "necessary to assist counsel in knowing what information to seek in discovery; analyze the available evidence, including that produced by Defendant and his portion of the City website; and understanding the testimony of City's IT employees as well as providing testimony to explain and prove technical aspects of this case."   *Id*.; ECF No. 184 5-6 (Hinkle provided testimony regarding a Twitter account's functionality, as well as the timing of when Reed's Twitter Account was removed from the City's website).

In opposition, Defendant argues that costs for Felts' expert witness costs in the amount of $12,448.20 are inappropriate because her "expert did not play a decisive—or even a meaningful—role in the resolution of the issues in this case."   (ECF No. 181 at 3).

The Court agrees that Felts' expert witness costs in the amount of $12,448.20 are not compensable.   This case revolved around the First Amendment implications of Reed blocking

Felts from commenting on his Twitter Account while he was President of the Board of Alderman. Although Twitter is a social media platform, the technical aspects of the program were never at issue. Rather, the Court finds that Felts' expert witness merely served as a resource for counsel and not the Court, and did not materially advance the litigation. More importantly, "Congressional authorization for recovery of expert witness fees as part of an attorneys' fees award is limited to actions to enforce 42 U.S.C. §§ 1981 or 1981a (employment discrimination) and does not include action under § 1983 for vindication of Constitutional rights." *Hirsh v. Lecuona*, No. 8:06CV13, 2008 WL 4457690, at *2 (D. Neb. Sept. 26, 2008) (citing 42 U.S.C. § 1988(c)("In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."); *Richlin Sec. Serv. Co. v. Chertoff,* 553 U.S. 571, 582-83,n. 6 (2008)); *see also Miller v. Cartel*, No. 1:20-CV-132, 2022 WL 4182361, at *5 (D.N.D. Sept. 13, 2022) ("This court does not have the authority to tax costs beyond that allowed under 28 U.S.C. § 1821 and cannot award expert witness fees beyond the $40 per day limit, plus reasonable travel and subsistence, Plaintiffs recovery of costs pertaining to experts and consultants is limited to the amounts authorized by § 1821(b)."). Therefore, the Court denies Felts' request for costs for her expert witness in the amount of $12,448.20. The other non-taxable costs are not disputed by the parties, and the Court awards non-taxable costs in the amount of $2,625.48.

### b.  Taxable Costs

On December 23, 2022, Felts filed her Bill of Costs, seeking $3,175.52 in costs for fees of the Clerk ($400), fees for printed or electronically recorded transcripts necessarily obtained for use in the case ($2,619.25), and fees for witnesses ($156.27). Then, on January 4, 2023, Felts submitted an itemization of taxable costs to support her Bill of Costs. (ECF No. 175). On January 9, 2023, the Court ordered Defendant to file any response to Felts' Bill of Costs no later than

January 17, 2023.   (ECF No. 178).   To date, Defendant has not filed any response.   Therefore, the Court awards Felts her taxable costs in the amount of $3,175.52, plus an additional $40 for the witness fee for Felts' expert, David Hinkle, for a total taxable cost of $3,215.52.[4]

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Sarah Felts' Motion for Attorneys' Fees and Nontaxable Costs (ECF No. 170) is **GRANTED**, in part, and **DENIED**, in part. The Court awards Plaintiff her attorneys' fees in the amount of $131,193.00, and her non-taxable costs in the amount of $2,625.48.

**IT IS FURTHER ORDERED** that Plaintiff Sarah Felts' Bill of Costs (ECF No. 172), with Supplement (ECF No. 175) is **GRANTED**.   The Court awards Plaintiff $3,215.52 in taxable costs.

An appropriate Judgment is filed herewith.

Dated this 30th day of January, 2023.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

---

[4] Felts did not include a request under 28 U.S.C. 1821(c) in the amount of $40 for Felts' expert David Hinkle's witness fee (ECF No. 172), presumably because she was requesting compensation for a larger amount as a non-taxable cost.   Because the Court denies Felts' request for her expert witness fee as a non-taxable cost, the Court awards Felts $40 as a taxable cost for the witness fee for David Hinkle.